WARD, Judge.
John and Robin Ford appeal a judgment rendered against them for breach of a contract to purchase real estate. We hold that because a suspensive condition of the contract was not fulfilled before expiration of the term for performance, the contract is null and its obligations are unenforceable. We therefore reverse the judgment.
The contract, dated August 15,1985, was a standard “Agreement to Purchase or Sell” form which was filled in by the parties. It provided for two sales: Mr. and Mrs. Ford would purchase a lot and residence on Shannon Drive in Violet, Louisiana from Charter Management, Ltd. for $65,000.00 and Charter would purchase Lot 97 in Angelique Estates from the Fords for $16,000.00. It was the parties’ intention that the purchase price Charter paid for Lot 97 would be the Fords’ down payment on the Shannon Drive residence. Charter had no interest in receiving the lot unless it sold the Shannon Drive residence, and the Fords wanted to sell the lot only as part of their purchase of a house. The contract was conditioned upon “the ability of the purchaser to borrow” a portion of the purchase price on the property. The contract contained no provision as to the consequences of the purchasers’ inability to obtain a loan because the parties did not fill in the blank in a clause which reads: “should the loan stipulated above be unobtainable by the purchaser, seller or agent within_days from date of acceptance hereof, this contract shall then become null and void....” The contract also did not provide when or in what order the two sales were to take place; it stated only that “the Act of Sale” was to be passed on or before October 81, 1985. For reasons disputed in this suit, neither sale took place.
The stockholders of Charter Management, Ltd. filed suit against the Fords in March of 1986, seeking specific performance and, alternatively, damages for breach of contract. In response to the Fords’ exception of no right of action, the corporation was added as a party plaintiff. After hearing testimony from the principals of Charter Management and from *1234 John Ford, the Trial Court rendered judgment in favor of Charter’s stockholders, awarding damages of $6,927.58 for the Fords’ breach of the contract. In their appeal, the Fords assign several errors in the judgment against them. Because we find merit in the contention that the contract was not enforceable, we have not considered the other assignments of error.
From the beginning of the parties’ negotiations, it was understood that the Fords would purchase the house on Shannon Drive with state bond money financing. After the contract was entered into, they apparently made timely application for this financing and received a loan “commitment letter” in mid-October. The letter stated, however, that the bond money loan was conditioned upon the lender’s receipt of the settlement statement on Lot 97. Settlement of the Lot 97 sale was required because the State would not release the bond money unless the financial statement of the prospective purchasers showed that they had funds for a down payment, which, in this case, were to come from the Fords’ sale of Lot 97. Mr. Ford claims, and Charter does not seriously dispute, that an officer of the lending institution told him that it would take the State three weeks to issue the loan after it received the settlement statement.
On October 22, realizing that the sale of Lot 97 could take place before October 31, but that there was insufficient time for releasing the bond money and passing the Shannon Drive sale before that date, Mr. Ford wrote a letter to Tom Stephenson, Charter’s secretary. The letter stated that the Fords intended to comply with the contract, but that it was impossible for both sales to be passed before October 31. The concluding paragraph of the letter stated:
If you, like us, do not wish for this situation to arise, and in all fairness to both parties, want to consider this contract null and void, please contact me as soon as possible.
In a letter which apparently crossed Mr. Ford’s letter in the mail, Charter's attorney wrote to the Fords also recognizing the impossibility of a closing on the Shannon Drive property before October 31 and blaming the problem on the Fords’ delay in accepting the loan approval. The letter further stated that Charter was anxious to go forward with the purchase of Lot 97 on October 31 and that the lending institution had advised that the closing for the Shannon Drive property could take place on November 14. From the record, it appears that these letters were the parties’ final communications before the October 31 deadline, at which time neither sale was passed.
The Fords contend that the Trial Court erred in finding that they breached the contract. They argue that the contract was subject to the suspensive condition that they would be able to borrow the funds with which to purchase the house, and that condition was not fulfilled before the contract expired on October 31, 1985. We agree.
The contract terms place it squarely within the rules of Civil Code Articles 1767 and 1773:
Art. 1767 A conditional obligation is one dependent on an uncertain event.
If the obligation may not be enforced until the uncertain event occurs, the condition is suspensive.
jjc # * * $ $
Art. 1773. If the condition is that an event shall occur within a fixed time and that time elapses without the occurrence of the event, the condition is considered to have failed.
# # # * # *
Louisiana courts have many times applied the principles set forth in these articles to agreements to purchase immovable property which are conditioned upon the purchaser’s ability to obtain financing. See, for example, Guichard v. Greenup, 259 So.2d 93 (La.App. 4th Cir.1972); Timmerman v. Smith, 413 So.2d 627 (La.App. 1st Cir.1982); and Woods v. Austin, 347 So.2d 897 (La.App. 3d Cir.1977). When a purchaser, through no fault of his own, is unable to obtain the loan upon which the agreement is conditioned, the obligations imposed by the agreement are not binding *1235 upon the parties; the agreement is null and the parties are released from their obligations to perform.
Applying these Code articles to the contract at issue, we construe the October 31, 1985 act of sale date as fixing the time within which the condition, the obtaining of a loan, shall occur. Although the Fords did obtain conditional loan approval before October 31, that approval was conditioned upon an event which could not occur before October 31. And when on October 31, the time for performance of the contract elapsed without occurrence of the condition — the ability of the Fords to obtain financing — the condition failed and the contract became null.
Charter relies upon Civil Code Article 1772 to argue that the contract should not be considered null because the failure of the condition was caused by the Fords’ delay in obtaining financing. That Article provides: “A condition is regarded as fulfilled when it is not fulfilled because of the fault of a party with an interest contrary to the fulfillment.” Mr. Ford testified, without contradiction, that he applied for the loan on August 16, the day after the contract was signed, and that approval may have taken longer than usual due to problems with an erroneous credit report. In support of Charter’s argument that the Fords were at fault is the fact that they waited approximately six days before accepting the loan by signing and returning the commitment form to the lender. Mr. Ford explained the delay by testifying that he consulted a lawyer before signing the document. Regardless of the reason for the delay, however, even if the Fords had returned the commitment document immediately, the acts of sale on both properties could not have been passed before the contract expired. There is contradicted evidence that the Fords had changed their minds and decided to purchase another house, and they therefore acted to delay the acts of sale so that the contract would be voidable. Even if accepted as true, however, this evidence of an interest contrary to fulfillment is not relevant under Article 1772 because there is no evidence that the Fords were at fault in causing the failure of the condition in the contract.
Accordingly, the contract became a nullity on October 31, 1985, and Charter has no remedy for breach. Because the Trial Court judgment was in error, we reverse and assess all costs in the Trial Court and in this Court against Charter Management, Inc.
REVERSED AND RENDERED