532 So.2d 212 (1988)
Jay ABERCROMBIE & Susan Abercrombie, Plaintiffs-Appellees,
v.
V.P. PIERRET REALTY & CONSTRUCTION CO, INC. a/k/a Pierret Construction Co., Inc., V.P. Pierret & Ruth Rabalais, Defendants-Appellants.
No. 87-682.
Court of Appeal of Louisiana, Third Circuit.
October 5, 1988.
*213 Domengeaux & Wright, Anthony D. Moroux, Lafayette, for plaintiffs-appellees.
David A. Blanchet & Seidel & Bailey, Fred K. Bailey, Lafayette, for defendants-appellants.
Before GUIDRY, FORET and STOKER, JJ.
FORET, Judge.
Plaintiffs, Jay Abercrombie and Susan Lyon Abercrombie, brought this action in quanti minoris against defendants, V.P. Pierret Realty & Construction Company, Inc., V.P. Pierret, and his wife, Ruth Rabalais, claiming certain defects in a home built and sold by defendants and subsequently acquired by the Abercrombies.[1]
The Abercrombies prayed for damages in the form of the cost of repairs, in effect, a reduction of the purchase price, in addition to damages for non-pecuniary loss and attorney's fees.
Defendants filed an exception of prescription which was referred to the merits. The trial court overruled the exception and granted judgment in favor of plaintiffs and against defendants, V.P. Pierret, Ruth Rabalais, and V.P. Pierret Realty & Construction Co., Inc. for $5,550, plus $1,000 for mental anguish, together with attorney's fees of $2,500.
Appellants, V.P. Pierret Realty & Company, Inc., a/k/a Pierret Construction Co., Inc., V.P. Pierret and Ruth Rabalais, appealed, urging the following assignments of error:
1. The trial court erred in denying the peremptory exception of prescription filed by defendants; and
2. The trial court erred in awarding plaintiffs the sum of $4,550 for roof and ceiling repairs because:
A. The roof was not defective, or alternatively, because the defendants were entitled to a credit for plaintiffs' use of the roof; and
B. With regard to the interior ceiling of the house, plaintiffs failed to mitigate their damages.
Appellants do not contest the awards of $1,000 for the correction of the sewer system, $1,000 for mental anguish, and $2,500 for attorney's fees. Therefore, we do not address the correctness of these awards.
The Abercrombies urge us to assess additional attorney's fees against defendants, as well as costs of this appeal and damages for frivolous appeal. Insofar as the Abercrombies have neither appealed nor answered defendants' appeal, this request is not properly before us for decision. See C.C.P. art. 2133.

FACTS
We adopt the trial court's succinct statement of facts, in pertinent part, as follows:
"Defendant constructed a residence during the latter part of 1977 and the beginning of 1978. In the month of April, 1978 he sold the residence to A.E. Hepfner who resided in the house until *214 December 23, 1978 when he sold it to the Plaintiff. A short time after purchasing the home, the Plaintiff complained to the Defendant about the sewerage system which did not function properly. He also complained about a water spot on the ceiling in one of the bedrooms. There were other minor defects which were corrected by the defendant.
"Sewerage Problem.
"Concerning the Plaintiff's claim of a defective sewerage system it suffices to say that the Defendant's attempts to correct the defective condition were unsuccessful and that the Plaintiff obtained corrective construction at a cost of $1,000.00.
"Water Damage Problem.
"Plaintiff filed the instant suit on October 19, 1979 alleging the construction of the home by the Defendant, the sale of the home to Plaintiff and alleged a defective condition in the construction "in that such house was equipped with a non-functioning sewer system". He alleged the cost of correcting the sewer system to be $1,000.00 and also requested damages and attorney's fees.
"On May 29, 1980 the Plaintiff amended his petition to allege the sale of the property to Hepfner.
"On February 6, 1981 the Plaintiff again amended his petition naming his wife as a petitioner and alleging that the home "was poorly and deficiently constructed causing damage to the roof and ceiling and necessitating replacement".
"The Plaintiff by his own admission became aware of the water damage problem on February 15th or 16th, 1979. Upon inspection, the Defendant found that the problem was caused by condensation and offered to make corrective construction to eliminate the problem. The Plaintiff refused to allow the defendant to perform any corrective measures.
"On January 29th, 1981 the roof was inspected by Gary Hendry who was of the opinion that the entire roof should be replaced at a cost of $8,000.00.
"On the trial of the matter, the Defendant offered the testimony of Alvin
Hebert, a roofing expert, who examined the construction on the day before the trial,....
"Hebert was of the opinion that the roof did not need to be changed and corroborated the opinion of the Defendant to the effect that the ceiling stains were caused by condensation. He found no evidence of any leakage from the roof. He testified that the damage to the ceiling in the bedroom could be corrected by the installation of new sheetrock and by refloating the entire ceiling."
After trial, the case was reopened upon motion of the Abercrombies, for the sole purpose of allowing plaintiffs to rebut defendants' expert, Hebert's, testimony and/or to offer evidence as to the cost of repairing the ceiling damage. Abercrombies' expert, Paul Patin, testified that the damage to the ceiling was caused by condensation caused by the design of the roof. He estimated the cost to repair the ceiling at approximately $1,850. He additionally testified that the warped appearance in the roof was due to the improper attachment of the plywood to the rafters. Patin estimated that a roof replacement would cost approximately $4,200 while the cost to repair, rather than replace, would be approximately $2,700.

PRESCRIPTION ISSUE
Appellants contend that the trial court erred in denying the exception of prescription, based upon one-year liberative prescription.
The Abercrombies bought the residence at issue on December 23, 1978. The sewer problems became apparent within several days of the sale. The Abercrombies noticed black spots on their bedroom ceiling in February of 1979. Suit was filed against V.P. Pierret Realty & Construction Co. in October of 1979, alleging that the house at issue was "built and sold by V.P. Pierret Realty & Construction." In response to an exception of no cause of action filed by defendants, wherein defendants claimed that the Abercrombie petition was deficient in failing to allege a contract between the parties, plaintiff amended his *215 petition in May of 1980 to allege that "defendant, V.P. Pierret Realty & Construction Company, sold said residence on or about April, 1978 to A.E. Hepfner, who in turn sold it to plaintiff herein, Jay Abercrombie, on or about December 24, 1978."
In February of 1981, Abercrombie amended his petition for the second time, adding his wife, Susan, as a plaintiff and adding V.P. Pierret, Ruth Rabalais, V.P. Pierret Realty & Construction Co., Inc. and V.P. Pierret d/b/a V.P. Pierret Realty & Construction Co., Inc. as defendants. This amended petition stated an additional claim for damages to the roof and ceiling based upon poor and defective construction.
In January, 1982, the Ambercrombies filed an amended and supplemental petition for the third time alleging that "wherever appears V.P. Pierret Realty & Construction Company, should be added `and/or V.P. Pierret Construction Company, Inc., a domestic corporation authorized to do and doing business within the State of Louisiana'."
The original petition was served personally on V.P. Pierret on October 23, 1979; the second supplemental and amending petition, together with the first amending petition and a duplicate original petition were served personally upon both Ruth Rabalais and V.P. Pierret on February 12 and 13, 1981; the third supplemental and amending petition was also served personally on V.P. Pierret on January 21, 1982.
The trial court, in denying the exception of prescription, stated that the exception pertained to the claim for roof damages alleged in plaintiffs' second supplemental and amending petition. Defendants now contend that the exception of prescription was intended to extend to all of plaintiffs' claims, not only those dealing with roof damage. The basis of defendants' contention is that the trial court erred in finding that the February, 1981 amending and supplemental petition naming V.P. Pierret and his wife, among others, as individual defendants, related back to the filing of the original petition which named only V.P. Pierret Realty & Construction Company as defendant. Appellants claim that there is no identity of interest between the original party defendants and the parties which were added in the amending and supplemental petition, and as such, the second supplemental and amending petition should not relate back to the filing of the original petition, interrupting prescription.
Ray v. Alexandria Mall, 434 So.2d 1083 (La.1983), established four criteria for determining whether an amendment which changes the identity of a party relates back to the date of filing of original petition, as follows:
"(1) The amended claim must arise out of the same transaction or occurrence set forth in the original pleading;
(2) The purported substitute defendant must have received notice of the institution of the action such that he will not be prejudiced in maintaining a defense on the merits;
(3) The purported substitute defendant must know or should have known that but for a mistake concerning the identity of the proper party defendant, the action would have been brought against him;
(4) The purported substitute defendant must not be a wholly new or unrelated defendant, since this would be tantamount to assertion of a new cause of action which would have otherwise prescribed." Id. at page 1087.
As to the first criterion, there can be no doubt that the amended claim adding additional defendants arose out of the same transaction or occurrence set forth in the original petition, i.e., the construction and sale of the residence bought by the Abercrombies.
As to the second criterion, the pivotal defendant in these proceedings is V.P. Pierret. Pierret was served personally with the original petition and all supplemental and amending petitions. Pierret, under cross-examination, testified that he owned the property on which the house was built; that he built the house; and that he subsequently sold the house to Mr. and Mrs. *216 Hepfner, Abercrombie's vendors. He also testified that he had worked for himself as a general contractor for thirty-nine years.
Also, under cross-examination, Pierret could not recall any written contract associated with the building of the house between himself and his construction company, the company he later testified actually built the house.
The evidence revealed that when the Abercrombies bought the house from Hepfner and his wife, it was represented to them that the house would be under warranty. When the Abercrombies first began noticing problems with the house, they communicated directly with Mr. Pierret as to these problems.
Whether the builder be V.P. Pierret individually or V.P. Pierret Realty & Construction Company, Inc. a/k/a V.P. Pierret Construction Company, Inc., Pierret had notice of the lawsuit when he was served personally with the original petition on October 23, 1979. There is a clear identity of interest between the original parties and the parties added by the later amending petition.
As stated by the late Judge Albert Tate in a law review article entitled Amendment of Pleadings in Louisiana (43 Tul.L. Rev. 211), which addressed the issue of when a suit filed against the wrong defendant interrupts prescription against the proper one:
"The suit against the wrong defendant interrupted prescription against the proper one, if the two were so closely related as to warrant the inference that the proper defendant knew of the act interrupting the prescription.1
* * * * * *
The fundamental purpose of prescription statutes is only to afford a defendant security of mind and affairs if no claim is made timely, and to protect him from stale claims and from loss or non-preservation of relevant proof. They are designed to protect him against lack of notification of a formal claim within the prescriptive period, not against pleading mistakes that his opponent makes in filing the formal claim within the period."
In this case, it can hardly be said that Pierret did not know of the original suit and the claim being made. All defendants had either actual or constructive notice of the legal claim against them within the one-year prescriptive period by the filing of Abercrombie's original petition.
As to the third criterion set forth in Ray, Pierret should have known that, but for the alleged misnomer concerning the original vendor of the house at issue, the action would have been brought against him individually.
Finally, as shown by our reasons above, the additional defendants added by the supplemental and amending petitions are by no means wholly new or unrelated defendants. Pierret was the owner and contractor of the Abercrombie home and, for purposes of prescription, no true distinctions can be made between Pierret and his construction company. Plaintiffs' amended petition of February 6, 1981 asserts facts arising out of the same conduct as set forth in the original petition and added the proper vendors as related defendants. The original petition gave fair notice of the general fact situation from which the amended claim arose. See, Baker v. Payne & Keller of Louisiana, Inc., 390 So.2d 1272 (La.1980). Therefore, the amended petition properly related back to the date of filing the original petition and the prescription of one year was interrupted. La.C.C.P. art. 1153. We affirm the trial court's denial of defendants' exception of prescription.
DAMAGE ISSUE
Defendants contend that the trial court erred in granting plaintiffs $4,550 for roof and ceiling damages because: 1) the roof was not defective or alternatively, defendants were entitled to a credit for plaintiffs' use of the roof; and 2) plaintiffs failed to mitigate their damages with regard to the interior ceiling of the house.
Paul Patin, plaintiffs' expert, testified that the plywood on the roof was not *217 secured to the roof rafters, causing a bowed appearance to the roof. He estimated that the cost to totally reroof the house would be $4,200 while merely repairing the roof would cost approximately $2,700. Notably, Mr. Hebert, defendants' construction expert, also testified as to the bowed appearance of the roof. This amount ($2,700), in addition to the $1,850 estimated to repair the ceilings damaged by condensation, totals $4,550, exactly the amount the trial court awarded. We do not find manifest error in the trial court's finding that the roof was defective and agree that an award of $4,550 is a reasonable reduction in purchase price.

A. CREDIT FOR USE
Appellants contend that they are entitled to a credit for the Abercrombies' use of the roof.
La.C.C. art. 2531 states, in pertinent part:
"The seller who knew not the vices of the thing is only bound to repair, remedy or correct the vices as provided in Article 2521, or if he be unable or fails to repair, remedy or correct the vice, then he must restore the purchase price, and reimburse the reasonable expenses occasioned by the sale, as well as those incurred for the preservation of the thing, subject to credit for the value of any fruits or use which the purchaser has drawn from it."
The Fourth Circuit spoke to this issue, as follows:
"A reading of C.C. Art. 2531 does not support appellant's position. The first paragraph of this article treats of two situations. It grants the `good faith' seller the right to repair or remedy the vice in the thing sold and thereby fulfill its obligation as a vendor. This article further provides if the seller is unable or fails to remedy the defect, the entire transaction then is vulnerable to an action in redhibition and the seller must return the purchase price, the reasonable expenses of the sale, and the cost for the preservation of the thing. Only in the latter instance, where rescission is decreed is the defendant entitled to a credit for the value of any fruits or use the purchaser enjoyed.
"Credit for use is allowed only in rescission because the object of redhibition is to restore the parties to the situation as it existed before the sale. It would be inequitable to require the seller to make the buyer whole by returning the purchase price, and other related reasonable expenses of the sale and preservation and at the same time permit him to retain the benefits of the fruits and use of the thing sold during the period of his possession. In order for the seller to be made whole it is essential that he receive credit for such fruits and use.
"However, where quanti minoris is decreed the seller is not entitled to a credit for use because the buyer retains the thing sold and, as the owner, is entitled to its fruits and use. The object of quanti minoris is to compensate the buyer for any uncorrected vices and defects by a comparable reduction in the purchase price."
Weber v. Crescent Ford Truck Sales, Inc. 393 So.2d 919, 923, 924 (La.App. 4 Cir. 1981), writ denied, 400 So.2d 667 (La.1981).
In affirming the trial court's judgment in quanti minoris, we conclude that defendants are not entitled to any credit for the Abercrombies' use of the defective roof.
B. MITIGATION OF DAMAGES
Finally, defendants contend that the Abercrombies failed to mitigate damages to the ceiling by failing to repair it themselves or by failing to allow defendants to repair it.
The tender of an object sold for repair of vices is not required to maintain an action in quanti minoris. Broussard v. Breaux, 412 So.2d 176 (La.App. 3 Cir.1982), writ denied, 416 So.2d 115 (La.1982). Additionally, the opportunity to repair is due only to a seller in good faith. A vendor-builder of a building is its manufacturer and is charged with the knowledge of its defects. In other words, a vendor-builder is presumed to be in bad faith. See, La.C.C. art. *218 2545; Cox v. Moore, 367 So.2d 424 (La.App. 2 Cir.1979), writ denied, 369 So.2d 1364 (La.1979); Licausi v. Tullis Townehomes of Tall Timbers, Inc., 452 So.2d 792 (La. App. 4 Cir.1984).
Pierret testified that his construction company built the Abercrombie home and he and his wife sold the home. He also testified that he had been a general contractor for 39 years; that he was the original designer of the Acadian home, the type of home bought by the Abercrombies; and that he was involved in all phases of the construction of this home. Thus, we find no distinction between Pierret's position as vendor or builder and as such, he is charged with knowledge of the defects in his construction company's work. See, Bustamante v. Manale, 397 So.2d 842 (La. App. 4 Cir.1981).
Therefore, the Abercrombies were not required to allow Pierret or his construction company to repair the defective home. The facts reveal that the Abercrombies did contact Pierret regarding the repair of both the sewerage problem and the ceiling problem. The results of Pierret's attempts to fix the sewer were unsatisfactory and Pierret's advice on repairing the ceiling constituted a mere temporary solution rather than an end to the condensation problem. The Abercrombies spent $1,000 to fix the sewer problem, a functional sewer being essential to basic living. The failure to fix the ceiling with their own means was neither unreasonable nor constituted a failure to mitigate damages. Mr. Abercrombie was then suffering from brain cancer, and was deceased at the time of trial. There was no showing that the Abercrombies had sufficient resources to repair the ceiling damage on their own. We therefore find that this assignment of error is without merit.
Based upon the foregoing, the judgment of the trial court is affirmed. Costs of this appeal are assessed to defendants.
AFFIRMED.
NOTES
[1] Jay Abercrombie was deceased at the time of trial and Susan Abercrombie, Katheryn Abercrombie Rouly, Lorna Lee Abercrombie and Jay David Abercrombie, as heirs of Jay Abercrombie were substituted as plaintiffs by amending petition.