KLIEBERT, Judge.
Mr. and Mrs. William Schollian, plaintiffs-appellants, perfected this appeal from a trial court ruling easting them in judgment on defendants’, William Ullo and Star Light Construction Company’s, reconven-tional demand for breach of a contract to buy and sell real estate. The defendants neither appealed nor answered the appeal, but in brief their counsel requested additional attorney fees for defending the appeal. The trial court ruling dated January 3, 1989 cast the buyers in judgment for $10,900.00, legal interest, court costs, and attorney fees of $5,000.00. For the reasons hereafter stated we amend the judgment to: (1) cast buyers in judgment for $7,900.00, (2) order the Clerk of the District Court to pay the $3,000.00 formerly held by *777 Buecola-McKenzie and now in the District Court’s registry to seller, and (3) to order Raymond Ullo to pay to the seller the $3,600.00 being held in escrow by him, and as thus amended, affirm.
On August 9, 1986 the buyers and seller entered into the agreement[1] attached hereto as Appendix I. As may be noted therefrom, the first page of the agreement was on a standard form purchase or sell agreement generally used by New Orleans realtors (here Merrill Lynch Realty). The standard form portion and the portion of the agreement headed “Addendum to Contract” on Merrill Lynch’s stationary were prepared by the realtor representing the buyers. The two typewritten pages entitled “Addendum Number 1 to Agreement to Purchase ...” and page number 3, entitled “Addendum Number 2,” were prepared by Raymond Ullo, President of Star Light Construction Company, the seller.
Under the terms of the standard printed form agreement, the selling price of the property was $145,000.00, with the buyers entitled to occupancy on September 1,1986, and the Act of Sale to be passed before lenders’ notary not later than August 31, 1987. The buyers were to deposit with seller’s agent $14,500.00 — $3,000.00 by personal check and the balance of $11,500.00 by demand note. The standard form also provided several conditions pertinent to a resolution of the issues here, namely, the following:
(1)The following provisions quoted from lines 20 through 25 of the standard agreement:
“This sale is conditioned upon the ability of purchaser to borrow upon this property as security the sum of $130,-500.00 by a mortgage loan or loans at an initial rate of interest not to exceed Market % per annum, interest and principal payable over a period of not less than 30 years in equal monthly installments or on such other terms that may be acceptable to purchaser. It is understood and agreed that Purchaser will pay discount points not to exceed Market percent and Purchaser agrees to pay origination fee not to exceed Market percent of the mortgage approved for the purchase of subject property.”
(2) The following provisions quoted from lines 31 through 35 of the standard agreement:
“Time being of the essence of this agreement, should purchaser, seller or agent be unable to obtain the loan stipulated above by 90 days prior to August 31, 1987 (date), this contract shall then be rendered null and void. Commitment by lender to make loan, subject to approval of title shall constitute obtaining of loan. Purchaser obligates himself to make good faith application for required loan(s) within 10 days of acceptance and purchaser warrants that he has $14,500 cash for downpayment; failure to make application or non-possession of such funds shall not void this agreement but shall be considered as a breach of this contract.”
(3) Following the description of the identification of the property which is the subject of the agreement, appears the following on line 4 of the agreement: “House to appraise for at least Sales price.”
The addendum prepared by the seller contained the following pertinent provisions:
*778 [[Image here]]
3. On September 1,1936 a deposit or^2650.00 iíill be placed with Buceóla McKinzie Real Estate Co.- "
4. On September 15,1936 a deposit 00"wljiL be given to Buceóla Mcicinzie Real Estate Gd. ^-
5. This $3000.00 deposit with Buceóla McKinzie Real Estate Co. will be credited to Mr. and Mrs, Schollian at act of sale, Provided that act of sale takes place on or before August 31,1937.
6. If an act of sale does not take place by August 31, 1937 then Mr. and Mr3. Schollian will forfeit said right to $3000.00 with no recourse to recover.
7. An $11,500.00 promissary note payable to Star Light Construction Co-, will be deposited with Buceóla McKinzie Real .Estate. Co. If-act of sale takes place on or before August 31»19¾7 then thfc$ll,500.00 demand note will be returned at act of sale.
8. On September 1,1986 Mr. and Mrs. Schollian will pay to Star Light Construction $1449.00 and the same figure for the following 11 Months,on the first of each month. $300.00 per month will_be credited to Mr. and Mrs. Schollian at act of sale for a total of $3600.00. If Mr. and Mrs. Schollian does not go to act of sale on or before August 31,1987 then they will forfeit the payments of $3600.00 and will forfeit said right of recourse to recover.
9. The $3000.00 thet Buceóla McKinzie Real Estate Co. will hold on deposit and the $3600.00 which will be paid to Star Light Const. Co. during the 12 months period will be credited to Mr. and Mrs. Schollian at the act of sale,if act of sale takes place on or before August 31»1987.
[[Image here]]
The buyers paid the $3,000.00 deposit provided for by paragraphs 3 and 4 above and at the time of trial these funds were being held in the court registry. They also paid the required monthly payments of $1,449.00 and the seller acknowledged holding $3,600.00 in escrow accumulated from the monthly payments.
The buyers made their first[2] and only application for a loan of $130,500.00 with Mellon Financial Service Corporation on July 31, 1987. At the time Mellon had a construction loan of $116,000.00 secured by mortgage on the property. In connection with this loan Wayne Sandoz had, at Mel-lons’ request, appraised the property from the plans and specifications as of May 2, 1986 at $145,000.00. On or about August 24, 1987 the buyers learned that Mellon’s approved appraiser, Wayne Sandoz, who had been selected by seller from Mellon’s approved appraiser list, appraised the property at $131,500.00. We note the appraisal was dated August 12, 1987 and contained a narrative by the appraiser stating economic conditions were sluggish, there was an over supply of housing, and prices were depressed.
Thereafter, several meetings were held between the buyers, seller, and their realtors at the seller’s request for the purpose of extending the date (August 31, 1987) for passage of the act of sale and making applications to other lenders for a loan, hoping a higher appraisal would be obtained. After these negotiations broke down, the seller, on September 4, 1987, wrote a letter to the buyers stating he was ready to pay for a new loan and appraisal application fee and containing the following last paragraph:
“Because of your refusal to sign an extension of our Purchase Agreement and the Addendum No. 1, dated August 9, 1986, and your refusal to make a new loan application in order to receive a more fair appraisal, please be advised that I am holding you in default of of our *779 agreement. All deposits held by Star Light Construction Company and Buceó-la McKinzie (sic) Real Estate will not be released by me or signed by me to be released.”
Thereafter, on September 16, 1987, buyers wrote a letter to Mellon asking them to withdraw the loan application and filed suit for the return of their deposits. ($3,000.00 —Buccola-McKenzie, and $3,600.00 — Raymond Ullo, President of Star Light).
The trial judge concluded the buyers had breached the contract, thus entitling seller to the liquidated damages of $14,500.00 (the amount of the deposit). Further, he gave credit for the $3,600.00 deposit accumulated from the monthly payments and rendered judgment in favor of seller for the balance ($10,900.00) plus attorney fees of $5,000.00.
In his reasons for judgment the trial judge said:
“The parties agreed that the act of sale would take place not later than one year after signing the lease/purchase agreement. Plaintiffs/defendant in reconvention [buyers] were supposed to apply for a loan within ten days of signing of the agreement, but instead, they waited almost eleven months. Then they [buyers] terminated the loan application rather than waiting for it to be denied.”
On appeal buyers contend the trial judge erred in: (1) finding the buyers breached the contract by failing to apply for a loan within ten days, (2) finding the buyers breached the contract by withdrawing the loan application before it was actually denied, and (3) failing to find the two suspen-sive conditions of the contract had nullified the contract, i.e., the property had not appraised for the purchase price of $145,-000.00 and buyers could not obtain a fixed rate, thirty year loan of $130,500.00 at market rates with the property as security for the loan.
In essence then, the buyers’ defense depends on the factual question, i.e., did the buyers make a timely good faith effort to obtain the loan. The seller contends the buyers did not make a good faith effort to obtain a loan and hence breached the agreement. Moreover, buyers contend even if there was no breach or the seller waived the breach, the buyers are, under the language of the addendum, entitled to retain the deposit because the sale did not take place by August 31, 1987. The trial judge concluded the buyers breached the agreement, therefore, seller was entitled to an amount equal to the deposit.
Our standard of review is limited to determining whether there was evidence before the trier of fact when, upon its reasonable evaluation of credibility, furnishes a factual basis for the factfinders’ findings. Canter v. Koehring, 283 So.2d 716 (La.1973). Under this standard, we are not at liberty to substitute our findings for those of the factfinder, although we believe they may be as reasonable or more reasonable than those of the initial factfinder. Rather, where the evidence before the trier of fact furnishes a reasonable basis for its finding, we are duty bound to uphold its findings. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Moreover, recently in Rosell v. ESCO, 549 So.2d 840 (La.1989), at 844, while addressing an appellate court’s standard of review the Louisiana Supreme Court said: “Where there are two permissible views of the evidence, the fact-finder’s choice between them cannot be manifestly erroneous or clearly wrong.”
Although we would be prone to agree with counsel for buyers’ contentions that by its own action seller waived the requirement that the good faith effort to obtain a loan commenced within ten days of the acceptance of the offer, we do not agree the buyers had until August 31, 1987 (the date by which Act of Sale was to be passed) in which to seek the loan. Under the terms of the agreement “... should the purchaser, seller, or agent be unable to obtain the loan stipulated above by 90 days prior to August 31, 1987 this contract shall be rendered null and void ...” Thus, under the terms of the agreement buyers were to make their good faith effort to obtain a loan sufficiently in advance of July 1, 1987 for it to be processed by that date. Nevertheless, the buyers did not make *780 their first and only application for a loan until July 31, 1987.
In Farnsworth/Samuel Ltd. v. Cervini, 492 So.2d 1245 (4th Cir.1986) writ denied, 497 So.2d 316 (La.1986), the Court said at page 1246:
A purchaser who is unable to obtain a loan stipulated in a purchase agreement, through no fault of his own, is normally relieved of his obligation to purchase and entitled to a return of his deposit. Burdon v. Harvey, 385 So.2d 514 (La.App. 4th Cir.1980), writ denied 393 So.2d 742 (La.1980); Liuzza v. Panzer, 333 So.2d 689 (La.App. 4th Cir.1976). The purchaser has an implied obligation to make a good-faith effort to obtain the financing, however, and if he fails to do so, the suspensive condition to the act of sale is considered as fulfilled, and he is estopped from asserting the nullity of the contract based upon his inability to obtain financing. LSA-C.C. Art. 1772 (formerly LSA-C.C. Art. 2040 (1870); Kraft v. Baker, 377 So.2d 871 (La.App. 4th Cir.1979); Groghan v. Billingsley, 313 So.2d 255 (La.App. 4th Cir.1975), writ denied 318 So.2d 46, 48 (La.1975).
Since the buyers here failed to make a good faith effort to obtain the loan and appraisal, we agree with the trial court’s conclusion the buyers breached the contract, entitling the seller to liquidated damages equal to the deposit amount ($14,-500.00). Ordinarily the seller would merely keep the deposit made by the buyers, however, here the buyers deposited only $6,600.00 ($3,000.00 with the seller’s realtor and $3,600.00 by monthly installments with Raymond Ullo) in cash. The balance was represented by a promissory note of $11,-500.00. After giving credit for the $6,600.00, the balance to which seller is entitled is $7,900.00.
The appellee has not appealed or answered the appeal. In brief, however, counsel for the appellee urges us to increase the award of $5,000.00 for attorney fees made by the trial court. In our view the $5,000.00 award was reasonable and sufficient to cover the work performed before this Court as well as the work performed in the lower court. Moreover, since appellee neither appealed nor answered the appeal there is a serious question as to whether we have the authority to revise or modify the judgment in appellee's favor. LSA-C.C.P. Article 2133; Arrow Fence Co. v. DeFrancesch, 466 So.2d 631 (5th Cir.1985), writ denied, 468 So.2d 575 (La.1985); Abercrombie v. Pierret Realty and Const., 532 So.2d 212 (3rd Cir.1988). Accordingly, we will not disturb the award of $5,000.00 for attorney fees.
For the foregoing reasons, the trial court judgment is amended to: (1) cast buyers in judgment for $7,900.00; (2) order the Clerk for the District Court to pay the $3,000.00 deposited with Buccola-McKenzie and now deposited in the Court’s registry to the seller; (3) order Raymond Ullo to pay to the seller the $3,600.00 being held in escrow by him. In all other respects, the trial court judgment is affirmed. Each party is to bear his own cost of the appeal.
AMENDED AND, AS AMENDED, AFFIRMED.
[[Image here]]
*781 [[Image here]]
[[Image here]]
*782 [[Image here]]
[[Image here]]
*783 [[Image here]]
*784 [[Image here]]
*785 [[Image here]]

. The agreement is sometimes referred to by counsel for plaintiffs as a buy and sell agreement, and by counsel for defendants as a lease/purchase agreement.

. Buyers testified they had checked newspapers and made phone calls shopping for lowest interest rates.