Judge Daniel L. Dysart
In this lawsuit involving the breach of an agreement to purchase property, defendant-appellant, Shi Gang Zheng a/k/a Tony Zheng, appeals a judgment in favor of plaintiffs-appellees, Robin Burgess and *767 Terence Blanchard ("the Blanchards"), awarding the Blanchards contractual stipulated damages and attorney's fees. The Blanchards answered the appeal, seeking an increase in the amount of attorney's fees awarded. For the reasons that follow, we affirm the trial court judgment in all respects and decline to increase the amount of the award for attorney's fees.
FACTUAL BACKGROUND
According to their Petition for Damages ("Petition"), the Blanchards were the owners of property located in English Turn in New Orleans, which they listed for sale. On July 31, 2015, their agent, Britt Galloway, received an offer from Mr. Zheng's agent, Delisha Boyd, to purchase the property for $990,000. The offer contemplated an "all cash sale" which expired on August 1, 2015. In response, the Blanchards made a counteroffer which incorporated the terms of Zheng's offer but added additional terms.[1]
Mr. Zheng accepted the counteroffer and emailed a copy of a check for the $10,000 deposit to Ms. Boyd, who forwarded it Mr. Galloway. He then submitted proof of funds and had the home inspected on August 7, 2015. In anticipation of the September 30, 2015 closing on the sale of the home, the Blanchards moved out of the home.
Because he was allegedly out of town, Mr. Zheng, through Ms. Boyd, requested additional time for the closing, and the Blanchards agreed to grant an additional fifteen days for the closing provided that Mr. Zheng pay an additional deposit of $25,000 or provide his agent with a power of attorney to complete the sale. Ultimately, Mr. Zheng did not appear for the closing on September 30, 2015 and the title company prepared a proces verbal documenting the failure of the sale to be completed. The Blanchards then sent Mr. Zheng a notice of default on October 1, 2015.
This suit followed. In their Petition, filed on November 4, 2015, the Blanchards sought to enforce the liquidated damages provision of the purchase agreement. More specifically, they sought payment of $99,000 (10% of the sale price), the $10,000 deposit, a $49,500 broker fee (5% of the sale price), and attorney's fees and costs.
In response to the Petition, Mr. Zheng filed a third party demand against Ms. Boyd and several other parties.[2] In it, he alleged that he had retained Ms. Boyd to act as his agent with respect to the purchase of the English Turn property. At that time, he informed Ms. Boyd that he needed to obtain financing for the purchase. However, Ms. Boyd prepared the all-cash offer, which she requested that he sign, and submitted it to Mr. Galloway. He then received the counteroffer. Although he executed the counteroffer, Mr. Zheng again advised Ms. Boyd that he required financing, and provided no proof of funds as required by the purchase agreement. He did, however, provide a letter from Golden Bank advising that he was eligible for a $900,000 loan, subject to final approval from the bank. Mr. Zheng was ultimately unable to obtain the financing or purchase the property.
The third party demand makes allegations of negligence and negligent misrepresentation against Ms. Boyd on the basis *768 that she prepared the all-cash contract without including a contingency for financing and that she forwarded the Golden Bank letter to show that Mr. Zheng was in the process of obtaining finances to purchase the property. Mr. Zheng alleged that, due to Ms. Boyd's negligent misrepresentation, he suffered damages because it purported to "satisf[y] a condition of the Contract which could not have otherwise been satisfied." The third party demand sought judgment against the third party defendants in the event that plaintiffs obtained a judgment against Mr. Zheng.
The Blanchards then filed a Motion for Summary Judgment seeking: (1) a determination that Mr. Zheng had breached his obligations under the purchase agreement and (2) a determination that they were entitled to the stipulated damages as set forth in the agreement. A hearing was held on the motion and, by judgment dated April 26, 2016, the trial court granted summary judgment in plaintiffs' favor, finding that Mr. Zheng had breached the agreement. The judgment found, however, that there remained the issue of damages sustained as a result of the breach. The Blanchards sought a review of that part of the judgment which denied the summary judgment on the issue of damages. This Court denied the writ application on July 6, 2016. Burgess, et al. v. Zheng , 16-0496 (La. App. 4 Cir. 7/6/16)(unpubl).
A bench trial on the matter took place on April 7, 2017. By judgment dated April 17, 2017, the trial court ruled in the Blanchards' favor and against Mr. Zheng for the following damages: $109,000, with legal interest and costs; $15,000 in attorney's fees; and $5,000 for brokerage fees. The judgment further dismissed Mr. Zheng's claims against Ms. Boyd with prejudice.
Mr. Zheng timely filed a suspensive appeal of the judgment, which was then converted to a devolutive appeal. As noted, the Blanchards answered the appeal, seeking an increase in the award of attorney's fees.
Standard of Review
At the outset, we note that the majority of Mr. Zheng's appellate brief focuses on whether the trial court erred in finding that there was a breach of contract (purchase agreement) in this case, and, more particularly, whether the alleged failure of a suspensive condition contained within the purchase agreement voided his obligations under the purchase agreement. The issue of whether there was a breach of the contract was addressed by the trial court when it partially granted the Blanchards' motion for summary judgment on April 26, 2016. That judgment is not properly before this Court, given that Mr. Zheng appealed only the April 17, 2017 judgment.[3]
Furthermore, the April 26, 2016 judgment does not contain sufficient decretal language for it to be considered a final judgment. Our jurisprudence indicates that "for the language of a judgment to be considered 'decretal,' it 'must name the party in favor of whom the ruling is ordered, the party against whom the ruling is ordered, and the relief that is granted or denied.' " Tsegaye v. City of New Orleans , 15-0676, p. 3 (La. App. 4 Cir. 12/18/15), 183 So.3d 705, 710, writ denied , 16-0119 (La. 3/4/16), 188 So.3d 1064 (emphasis supplied), quoting *769 Board of Supervisors of La. State Univ. and Agric. and Mech. Coll. v. Mid City Holdings, L.L.C. , 14-0506, p. 3 (La. App. 4 Cir. 10/15/14), 151 So.3d 908, 910.
Here, the April 26, 2016 judgment simply states that "[i]t is ordered, adjudged and decreed that the Motion for Summary Judgment is GRANTED on the breach by defendant/buyer, Shi Gang Zheng a/k/a Tony Zheng as buyer of the August 1, 2015 Agreement to Buy or Sell" leaving "[t]he only remaining issue [of] damages." While it grants summary judgment, it does not state what relief was granted. However, as the Board of Supervisors Court indicated, when a judgment "is lacking in definitive decretal language necessary for the exercise of our appellate jurisdiction, the appellant is not entitled as of right to appellate review, but may nonetheless invoke our supervisory jurisdiction, which is discretionary with us to grant" Id. , 14-0506, p. 3, 151 So.3d at 910. Here, we find it appropriate to exercise our supervisory jurisdiction because the April 17, 2017 judgment is intertwined with the April 26, 2016 judgment; that is, the April 17, 2017 judgment is dependent on a finding of a breach of contract, which was the issue in the summary judgment motion. Moreover, we find that judicial economy will best be served by exercising our supervisory jurisdiction.
Thus, there are two judgments at issue in this appeal - one granting summary judgment on the issue of a breach of contract; and one awarding damages pursuant to the contract. However, while Mr. Zheng technically appealed the April 17, 2017 judgment, the assignments of error and the issues raised in his appeal only address the breach of contract issue. The only mention of the April 17, 2017 judgment is the request that this Court "vacate the Trial Court's April 17, 2017 Judgment in favor of the Plaintiffs and against Zheng." Mr. Zheng does not challenge the amount of the damages awarded in the April 17, 2017 judgment or otherwise raise any issue with respect to that judgment. Similarly, while the trial court's judgment dismissed all claims made against Ms. Boyd, no issue is raised as to this ruling on appeal. Thus, any issues concerning damages or the dismissal of the claims against Ms. Boyd are not before this Court.[4] Accordingly, we only address the merits of the April 26, 2016 judgment in this appeal, which granted summary judgment in the Blanchards' favor.
Appellate review of the grant of a summary judgment is de novo , using the same criteria district courts consider when determining if summary judgment is proper. Madere v. Collins , 17-0723, p. 6 (La. App. 4 Cir. 3/28/18), 241 So.3d 1143, 1147. In that regard, we look to determine whether "the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966 A(3). The Blanchards, as the movers, bore the burden of proof, but were not required to "negate all essential elements of the adverse party's claim, action or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." La. C.C.P. art. 966 D(1). Mr. Zheng, as the adverse party to the motion bore the burden "to produce factual support *770 sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." Id.
DISCUSSION
The contract at issue in this case is a standard-form Louisiana Residential Agreement to Buy and Sell ("Agreement") with an act of sale that was to take place on September 30, 2015. The Agreement contained a provision indicating that the sale was an "all cash sale," and a statement that "the BUYER has cash readily available to close the sale of the Property." The Agreement provided the following with respect to a default of the agreement by the buyer:
In the event of any default of this Agreement by the BUYER, the SELLER shall have at the SELLER'S option the right to declare this Agreement null and void with no further demand, or to demand and sue for any of the following: 1) Termination of this Agreement; 2) Specific performance; 3) Termination of this Agreement and an amount equal to 10% of the Sale Price as stipulated damages.
Further, the SELLER shall be entitled to retain the Deposit. The prevailing party to any litigation brought to enforce any provision of this Agreement shall be awarded their attorney fees and costs. The BUYER may also be liable for Broker fees.
The Agreement further provided additional terms and conditions, including a $5000 deposit and the requirement that the buyer "supply proof of funds within 48 hours of acceptance."
Mr. Zheng presented the Agreement to the Blanchards as an offer to purchase the property. The Blanchards then submitted a counter-offer which increased the deposit amount to $10,000, required an appraisal to be performed within twenty days of the acceptance of the offer and reiterating that "[p]urchaser to provide proof of funds within 48 hours of acceptance of this offer." Mr. Zheng accepted the counter-offer as evidenced by his signature dated August 1, 2015.
Pursuant to the Agreement, Mr. Zheng timely conducted an inspection of the property. Thereafter, there were issues with respect to the closing date and extending the date for the closing, and there were issues with respect to Mr. Zheng's provision of "proof of funds."[5] Mr. Zheng was unable to obtain financing for the purchase and, ultimately, the closing did not take place on the scheduled date, September 30, 2015. The Blanchards then elected to enforce the Agreement's provision which allowed for the termination of the Agreement and an award of 10% of the purchase price, as well as a forfeiture of the deposit.[6]
Prior to the trial on damages, the issue of the breach of contract was resolved by way summary judgment in April, 2016, at which time, the trial court simply found that there had been a breach. No reasons for judgment were issued at that time. When the trial court rendered judgment after trial, however, the trial court then issued written Reasons for Judgment which expounded on its finding of a breach of the Agreement. It first noted that it had (previously) "granted the summary judgment *771 on liability, holding that Mr. Zheng failed to provide the proof of funds within 48 hours of the signed Agreement." The trial court continued to explain its finding regarding a breach of the Agreement; relying on La. C.C. art. 2623,[7] the trial court found:
Plaintiffs placed two additional conditions in their counter-offer to Mr. Zheng: that he verify proof of funds within 48 hours of the signed agreement to purchase; and that the property be appraised for more than the purchase price. This Court finds that these were suspensive conditions. Mr. Zheng submitted his offer as an all-cash offer. Plaintiffs responded by adding that Mr. Zheng show proof of his ability to pay the purchase price. La. Civ. Code. art. 1772 provides "[A] condition is regarded as fulfilled when it is not fulfilled because of the fault of a party with an interest contrary to the fulfillment." See also Schollian v. Ullo , 558 So.2d 776 (La. App. 5th Cir. 1990), writ denied 564 So.2d 324 (La. 1990) (holding that buyers breached purchase agreement under which they agreed to make a good-faith effort to obtain financing in advance of July 1, 1987 and where buyers did not make an attempt to secure financing until July 31,1987; therefore, seller was entitled to liquidated damages equal to deposit amount). It is undisputed that Mr. Zheng failed to provide proof of funds within 48 hours. This Court held, in denying the Motion for Summary Judgment [as to damages], that the application of the stipulated damage clause depended upon Mr. Zheng's good faith in procuring a proof of funds and/or financing. (internal footnote omitted).
In support of his argument that the trial court's April 26, 2016 judgment should be reversed, Mr. Zheng maintains that the purchase agreement in this case contained a suspensive condition which was not timely met; accordingly, "the obligations imposed by the purchase agreement were not binding" and there "was no breach of contract." He advances two arguments: (1) that the Blanchards did not prove that Mr. Zheng was at fault for the failure of the suspensive condition to have been met; and (2) that Mr. Zheng made a good faith effort to obtain the funds necessary to purchase the home and, therefore, was not at fault for the failure of the suspensive condition.
While we agree with the trial court that Mr. Zheng breached the Agreement, we do not find that the provision in the Agreement which required Mr. Zheng to provide proof of funds was a suspensive condition, the failure of which had any bearing on the breach of the Agreement. Nor do we find that Mr. Zheng's faith, good or bad, in providing proof of funds to be at issue in finding a breach in the Agreement.
In so holding, we employ the well-settled rule that "[a] contract is the law between the parties, and courts are obliged to give them legal effect according to the common intent of the parties." 1100 S. Jefferson Davis Parkway, LLC v. Williams , 14-1326, pp. 3-4 (La. App. 4 Cir. 5/20/15), 165 So.3d 1211, 1215-16, writ denied , 15-1449 (La. 10/9/15), 178 So.3d 1005, citing La. C.C. arts. 1983 and 2045 ; 6126, L.L.C. v. Strauss , 13-0853, p. 12 (La. App. 4 Cir. 12/4/13), 131 So.3d 92, 100-101. "The parties' intent will be determined by the *772 words of the contract if they are clear, explicit, and lead to no absurd consequences." 1100 S. Jefferson Davis Parkway, LLC , 14-1326, p. 4, 165 So.3d at 1216. In this case, there is no contention that the Agreement is at all ambiguous; and, we find the language of the Agreement to be clear and unambiguous. The language therefore "will be enforced as written." Lalla v. Calamar, N.V. , 08-0952, p. 8 (La. App. 4 Cir. 2/11/09), 5 So.3d 927, 932.
Under our well-settled "rule of contract interpretation[,] '[c]ontractual provisions are construed as not to be suspensive conditions whenever possible.' " Tymeless Flooring, Inc. v. Rotolo Consultants, Inc., 14-1392, p. 9 (La. App. 4 Cir. 5/20/15), 172 So.3d 145, 151, quoting Southern States Masonry, Inc. v. J.A. Jones Const. Co. , 507 So.2d 198, 201 (La.1987) (emphasis supplied). Southern States involved a dispute between general contractors for the 1984 Louisiana World's Fair (the "Fair") and their subcontractors, to whom they had outstanding payments. The Fair at that point had filed for bankruptcy, and had not fully paid the general contractors. One general contractor relied on a provision in the subcontract which stated that "Contractor shall pay to Subcontractor, upon receipt of payment from the Owner , an amount equal to the value of Subcontractor's completed work" for its position that it did not owe the subcontractor because it had not been paid by the Fair. (Emphasis supplied).[8] In rejecting the general contractors' arguments, the Court held:
The clauses in this case ... did not suspensively condition the contractors' obligation to make payments until the contractors were in fact paid by the owner. They merely dictated when the contractor's payment should occur.
Id. , 507 So.2d at 203. The Court cited former Civil Code articles 2021 and 2043 for the principles that "conditional obligations as those 'made to depend on an uncertain event' " and that "an obligation subject to a suspensive condition 'depends ... on a future and uncertain event.' " Id. In so noting, the Court distinguished a "term" in a contract with a "condition of the contract," stating that [a] term, in contrast to a condition, may consist of a determinate lapse of time or of an event, 'provided that [the] event be in the course of nature, certain.' " Id. It then held:
In all events[,] the duty of payment by [the Fair] to the general contractors was not viewed as an uncertain event, the occurrence of which, in the contemplation of the parties, would be required in order to trigger the reciprocal obligations.
Id. It concluded that "the payment provisions do not constitute suspensive conditions which negate any obligation on the part of the general contractors until they are paid by the owner." Id. at pp. 201-02.
Articles 2021 and 2043 are now incorporated into La. C.C. art. 1767 which states, in pertinent part, that "[a] conditional obligation is one dependent on an uncertain event. If the obligation may not be enforced until the uncertain event occurs, the condition is suspensive." Thus, where an obligation is dependent on the occurrence of an uncertain event, the condition is considered to be a suspensive one.
Here, the trial court properly cited Schollian for these principles. There, a real estate contract to purchase expressly provided that the sale was "conditioned *773 upon the ability of purchaser to borrow upon this property as security the sum of $130,500.00 by a mortgage loan" at a certain interest rate. Schollian , 558 So.2d at 777. The contract further provided that, in the event that the purchaser was unable to obtain financing within 90 days prior to August 31, 1987, the "contract shall then be rendered null and void." Id. Thereafter, the purchasers made only one attempt to obtain a loan, which was denied because the appraisal fell below that required for a loan. Citing Farnsworth/Samuel Ltd. v. Cervini , 492 So.2d 1245 (La. App. 4 Cir.1986) for the principle that "[a] purchaser who is unable to obtain a loan stipulated in a purchase agreement, through no fault of his own, is normally relieved of his obligation to purchase and entitled to a return of his deposit," the Court found that the purchasers did not timely apply for a loan and thus breached their obligations under the contract.[9] Id. at p. 780.
Other courts have consistently held that when a purchase agreement contains the suspensive condition that a purchaser be able to obtain financing, the purchaser's inability to do so, through no fault of his own, relieves him of his obligation under the purchase agreement. In the more recent case of Rousset v. Smith , 14-1409, pp. 7-8 (La. App. 4 Cir. 9/23/15), 176 So.3d 632, 638, writ denied sub nom. Schafer v. Tubbs , 15-1939 (La. 11/30/15), 184 So.3d 35, like the Schollian case, the purchase agreement specifically stated that the sale of the home was "conditioned upon the ability of the purchaser to borrow upon this property as security the sum of $424,400.00 by a mortgage loan." Also like the Schollian case, the agreement afforded the purchasers forty-five days to obtain financing, in default of which, "the contract shall then become null and void, and the agent is hereby authorized to return the purchaser's deposit in full ." Id. , p. 8, 176 So.3d at 638. (Emphasis supplied).
Consistent with the Schollian decision, this Court found that the obligation to purchase the home was "clearly conditioned upon an uncertain event, which is the [purchasers'] ability to secure financing;" "[t]hus, neither party's obligation arising under the agreement can be enforced until the uncertain event occurs." Id. , p. 9, 176 So.3d at 639.[10] When the date of the sale arrived, the purchasers had not sold their home and, in turn, obtained a loan; accordingly, this Court found that "the condition of the purchase-sell agreement failed." Id. , p. 27, 176 So.3d at 648. See also , Louisiana Real Estate Comm'n v. Blakes , 04-216, p. 7 (La. App. 5 Cir. 7/27/04), 880 So.2d 79, 83 ("A contract to sell real estate which is contingent upon obtaining sufficient financing is a contract subject to a suspensive condition, and the contract does not become effective until the condition occurs."); Garsee v.Bowie , 37,444, pp. 9-10 (La. App. 2 Cir. 8/20/03), 852 So.2d 1156, 1161 ; Boudreaux v. Elite Homes, Inc. , 259 So.2d 669, 671 (La. App. 4 Cir. 1972) (a suspensive condition was *774 found where the purchaser of property conditioned the purchase on the prior sale of the purchaser's property).
Mr. Zheng cites the case of Bacon v. Ford , 522 So.2d 1232, 1233 (La. App. 4 Cir. 1988) for his position that he was not at fault for the failure of a condition of the Agreement. His reliance on this case is misplaced. As in all of the previously discussed cases, in Bacon , the sale of the property was conditioned on the purchaser's ability to obtain financing for the purchase. The Court found that "the contract was subject to the suspensive condition that [the purchasers] would be able to borrow the funds with which to purchase the house, and that condition was not fulfilled before the contract expired." Id. 1234. Thus, the court found no breach.
In the present case, there was no provision in the Agreement which conditioned the sale on Mr. Zheng's ability to obtain financing. To the contrary, the sale was an "all-cash sale." The Agreement did contain a section whereby Mr. Zheng could have chosen a "financed sale" which specifically indicated that the sale would be "conditioned upon the ability of BUYER to borrow with this Property as security for" an unspecified loan.[11] However, this option was not selected by Mr. Zheng, who warranted that he "ha[d] cash readily available to close the sale" of the property.
While the Agreement did require Mr. Zheng to supply "proof of funds" within 48 hours, we find this to be merely a term of the sale, and not a suspensive condition as contemplated by our case law. That is, we do not find the term to be "an uncertain event" which suspends the "obligation ... until the uncertain event occurs" as provided by La. C.C. art. 1767.
Because we have found that there was no suspensive condition, we need not address Mr. Zheng's good faith efforts to obtain financing. We recognize that our jurisprudence provides that "a provision making a sale of real property contingent upon the purchaser's obtaining a loan imposes a duty upon the purchaser to make a good faith application for the loan" and that the issue of "[w]hether or not a party has acted in good faith depends on the facts and circumstances peculiar to each case." Liuzza v. Panzer , 333 So.2d 689, 691-92 (La. App. 4 Cir 1976). See also , Farnsworth , 492 So.2d at 1246 (the "purchaser has an implied obligation to make a good-faith effort to obtain the financing"); Kraft v. Baker , 377 So.2d 871, 873-74 (La. App. 4 Cir. 1979) (a "financing provision made the contract one subject to a suspensive condition, but under such a provision the buyer has an implied obligation to make a good faith effort to obtain financing"). However, as in the instant case, with an all-cash sale, there is no obligation to obtain financing and no corresponding obligation to act in good faith.
Having found no error in the trial court's finding that Mr. Zheng breached the Agreement, we turn to the issue of attorney's fees, raised in the Blanchards' answer to the appeal. Two issues are presented; (1) whether the Blanchards are entitled to an increase in the amount of attorney's fees and (2) whether Mr. Zheng should be ordered to pay all costs of the appeal. With respect to the first issue, the Blanchards maintain that the trial court erred in failing to award attorney's fees of 33 1/3% of the judgment, the percentage set forth in the contingency agreement signed with their attorney. Other than referring to that agreement, the Blanchards *775 make no argument and cite no case law supporting their position that they should receive an amount equal to their contingency agreement. As to the second issue concerning the costs of the appeal, in their brief, the Blanchards make no argument in support of this Court's assessing the costs of this appeal to Mr. Zheng; they simply request an order from this Court assessing all costs to Mr. Zheng.[12]
The Blanchards maintain that the trial court's error in failing to award attorney's fees of 33 1/3% is due to its misconception that the contingency agreement is not contained in the record. They point to their memorandum in Support of Motion for Summary Judgment, which attached the contingency agreement, as proof that it was contained within the record.
The record reflects that the contingency agreement was not submitted into evidence at trial and Ms. Blanchard was not questioned about that agreement. As the Louisiana Supreme Court has indicated, "[e]vidence not properly and officially offered and introduced cannot be considered, even if it is physically placed in the record." Denoux v. Vessel Mgmt. Servs., Inc. , 07-2143, p. 6 (La. 5/21/08), 983 So.2d 84, 88. See also , Milburn v. Emanuele , 12-0235, p. 2 (La. App. 4 Cir. 6/13/12), 96 So.3d 638, 640 ("while a copy of the contract was attached to the petition and to the memorandum in support of the exceptions, neither party introduced the contract into evidence during the hearing. 'Evidence not properly and officially offered and introduced cannot be considered, even if it is physically placed in the record.' "); Scheuermann v. Cadillac of Metairie, Inc. , 11-1149, p. 6 (La. App. 5 Cir. 5/31/12), 97 So.3d 423, 427 ; Wilson v. BeechgroveRedevelopment, L.L.C. , 09-1080, pp. 4-5 (La. App. 5 Cir. 4/27/10), 40 So.3d 242, 244.
Accordingly, because the contingency agreement, while attached to the Blanchards' motion for summary judgment, was not introduced at the trial, the trial court properly did not consider it in awarding attorney's fees. We note, however, that even if the contingency agreement had been admitted at trial, a trial court is not bound by a contingency agreement in determining an award of attorney's fees. Borgnemouth Realty Co. v. Par. of St. Bernard , 13-1651, p. 18 (La. App. 4 Cir. 5/21/14), 141 So.3d 891, 903, writ denied , 14-1285 (La. 9/26/14), 149 So.3d 266, and writ denied , 14-1351 (La. 9/26/14), 149 So.3d 269 ("[a] court may consider a contingency contract as well, but is not bound by such an agreement in determining reasonable attorney's fees"). We also note that the reasonableness of an award of attorney's fees is reviewed "under an abuse-of-discretion standard and decline to modify such awards on appeal unless that standard is met." Id. , p. 17, 141 So.3d at 902.
This Court has also held that "[a] reasonable attorney's fee is decided on a case-by-case basis and a 'court does not have to hear evidence concerning time spent or hourly rates charged in order to make an award since the record will reflect much of the services rendered.' " 1100 S. Jefferson Davis Parkway, LLC v. Williams , 14-1326, p. 11 (La. App. 4 Cir. 5/20/15), 165 So.3d 1211, 1220, writ denied , 15-1449 (La. 10/9/15), 178 So.3d 1005, quoting *776 Lifetime Const., L.L.C. v. Lake Marina Tower Condo. Ass'n, Inc ., 12-0487, p. 10 (La. App. 4 Cir. 3/27/13), 117 So.3d 109, 116 (citations omitted). Factors to be considered in evaluating the reasonableness of an attorney's fee award include:
(1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) amount of money involved; (5) extent and character of the work performed; (6) legal knowledge, attainment, and skill of the attorneys; (7) number of appearances made; (8) intricacies of the facts involved; (9) diligence and skill of counsel; and (10) the court's own knowledge.
Borgnemouth Realty Co ., 13-1651, pp. 17-18, 141 So.3d at 903, citing State, Dept. of Transp. and Dev. v. Williamson , 597 So.2d 439, 442 (La.1992).
In this matter, other than referring to the contingency agreement, the Blanchards have failed to put forth any evidence or make any compelling argument to demonstrate that the award of attorney's fees was error. In considering the factors set forth above, we do not find that the trial court abused its discretion in determining the award for attorney's fees. Nor are we inclined to assess the costs of this appeal to Mr. Zheng.
CONCLUSION
For the reasons set forth more fully herein, the judgment of the trial court is affirmed.
AFFIRMED

Those additional terms increased the $5,000 deposit to $10,000, required an appraisal to occur within twenty days, and required the submission of proof of funding for the all-cash sale.

Those parties included Patterson Bank, its employee, Teresa Rappmundt, and an unnamed insurance company, all of whom Mr. Zheng voluntarily dismissed on February 19, 2016.

In all of the pleadings related to the appeal (Mr. Zheng's Motion for Suspensive Appeal, the Order of Suspensive Appeal, the Motion to Convert Suspensive Appeal to Devolutive Appeal and the Order Converting Suspensive Appeal to Devolutive Appeal), the only judgment for which appellate review is sought is the April 17, 2017 judgment. There is no mention of the April 26, 2016 judgment.

"It is also well settled that if an appellant identifies an assignment of error or an issue presented for review, but fails to brief that point with citations to the record and support in the law, that issue or assignment is deemed waived." McMaster v. Progressive Sec. Ins. Co. , 14-0155, pp. 6-7 (La. App. 4 Cir. 10/29/14), 152 So.3d 979, 983, writ denied , 14-2641 (La. 3/6/15), 160 So.3d 1289.

As the trial court found and the record supports, further efforts were made to extend the deadline for the closing, including increasing the amount of a non-refundable deposit; however, Mr. Zheng did not agree to these terms.

The record reflects that Mr. Zheng's $10,000 deposit check was never negotiated (if, in fact, it was ever submitted).

Article 2623 provides, in pertinent part, that "[a]n agreement whereby one party promises to sell and the other promises to buy a thing at a later time, or upon the happening of a condition, or upon performance of some obligation by either party, is a bilateral promise of sale or contract to sell. Such an agreement gives either party the right to demand specific performance."

Other general contractors relied on similar provisions in its subcontract in failing to pay its subcontractor.

The contract required the purchasers to obtain financing within 90 days prior to August 31. The evidence at trial established that they did not seek a loan until July 31, which clearly did not provide sufficient time within which to obtain the loan; the Court stated: "under the terms of the agreement buyers were to make their good faith effort to obtain a loan sufficiently in advance of July 1, 1987 for it to be processed by that date." Id. at p. 26, 176 So.3d at 779.

The purchasers in this case required the sale of their own home before they could purchase the property at issue. The Court found that the sellers were well aware of this fact and that the mortgage company "conditioned its loan approval with the [purchasers] on the sale of their Broadway home." Id. , p. 9, 176 So.3d at 646.

There was no need to include a loan amount as Mr. Zheng offered to purchase the property with cash.

Accordingly, the failure to brief this argument constitutes a waiver of that argument. See footnote 4.