JAMES F. McKAY III, Judge.
|,The plaintiffs/appellants[1] appeal the judgment of the trial court granting the defendant, Kong Wong[1] s, motion for summary judgment. The appellants failed to sustain their burden of proof pursuant to La.C.C.P. art. 966(C)(2). For the reasons that follow, we affirm the trial court’s judgment.
FACTS AND PROCEDURAL HISTORY
On August 20, 1995, at approximately 12:35 a.m., Antonio Dominique Kenny (“Antonio”), the two-year old son of Clarence L. Kenny and Melissa A. Simon, fell from a building located at 800 St. Charles Avenue and Julia Street known as the Hummingbird Hotel. As a result of this fall, Antonio suffered severe and permanent disabling injuries.[2] On August 19, 1996, Clarence Kenny and Melissa Simon filed a petition for damages against Bertha Hillensbeck, Harry J. Hillensbeck, the Hummingbird Hotel, Inc., and the owners of the leased premises, Kong Wong, his brothers, Harry Wong and Charlie W. Tong. By supplemental petition, filed on July 14,1999, Loretta Wong Fonseca, Jonathan Wong, Steven |2Wong and Michael Wong, alleged to be the heirs of the late Harry Wong were added as additional defendants.[3] Frances Chuy Wong, alleged to be the wife of Harry Wong, was also added as an additional defendant.[4]
In their petition for damages, Clarence Kenny and Melissa Simon alleged that Antonio’s fall was an accident caused by a defect in the premises, “... as a result of broken, inadequate, or dangerous door, locks, -windows, fire escapes and other appurtenances of the building.” The appellants assert that the child fell from “a window or fire escape on an upper floor of the hotel portion of the Hummingbird Hotel and Grill.” They also assert that at the time of the accident they were both working at the Hummingbird Grill located on the “ground floor of the premises”, and that their five children, ages seven and younger, were sleeping on either the second or third floor of the Hummingbird Hotel. They further alleged that they would check on the children “approximately every 15-20 minutes to see that they continued to sleep and conditions were satisfactory.” At approximately 12:45 a.m., Melissa Simon allegedly checked on the children and found that Antonio was missing from the room. Specifically, in paragraph XI of the original petition, the plaintiffs alleged:
“... Antonio Dominique Kenny got up from his bed and went from the hotel room out into the hallway, through a door which could not be locked, due to a broken latch; and, thereafter, the said child walked down a hall, descended a short flight of stairs, proceeded through an open fire door which should have *949 been closed, and ultimately entered a room from which the hall door may have been missing. Then, the said child ^apparently went out an open window, which window was unprotected, was very low to the floor and constituted a hazard or attractive nuisance. Then the minor child was on the fire escape and thereafter fell onto the street below ...”
On August 2, 2011, the Wongs filed a motion for summary judgment, asserting that the plaintiffs could not sustain their burden of proof pursuant to La.C.C.P. art. 966(C)(2). In support of their motion for summary judgment, the Wongs submitted the depositions of Elsie Gatterer (maiden name Elsie Knapp), an eye witness to the accident, and New Orleans Police Department Officer Granville Summers, the accident investigator, as well as a copy of the commercial lease of the building entered into by the Wongs and the Hummingbird Hotel, Inc.
Ms. Gatterer, the only known eye-witness to Antonio’s fall, testified that her vantage point was the Kinko’s print shop, where she was working the night shift on the evening of the incident.[5] She testified in that she was working at a copy machine by the window facing Julia Street when she saw an object falling which initially looked like a doll or poodle. She was unaware of how or where the fall initiated. However, after the object hit the street she immediately looked up and saw an unknown male on the fire escape. She then apprised her co-worker, Michelle Varrone, of the situation, who then immediately ran into the street where she identified the falling object as a small child. Ms. Gatterer simultaneously called 911. The phone operator asked her to see if the child was breathing. She told him he was. She also testified that as advised by 911 responders, she kept everyone away from the child until the 911 responders could arrive on the scene. |4Ms. Gatterer testified that a man who appeared to be the child’s father, Clarence Kenny, arrived on the scene and began talking to the child. He appeared to be the same person she saw on the fire escape just after she saw the child falling.
Later that night, Officer Granville Summers, from the New Orleans Police Department (“NOPD”), child abuse division, was summoned to the scene of the accident. He arrived on the scene after the child had been taken to the hospital. Officer Summers determined that Antonio lived with his parents, Clarence Kenny and Melissa Simon, and four siblings, all under seven years of age, in Apartment A-6, an apartment on the other side of the building from where the child fell. Clarence Kenny and Melissa Simon were both employees at an all-night bar and grill on the ground floor of the building known as the Hummingbird Bar and Grill. Officer Summers determined after interviewing Clarence Kenny that he was Antonio’s father. On the night of the incident, Officer Summers walked through the building with Clarence Kenny and observed the location of Apartment A-6. He concluded that Antonio, a two-year old child, could not have traversed through several flights of stairs, heavy closed doors and windows which were between his parents’ apartment in the building and the Julia Street side of the building alone. After his investigation, he could not determine from which floor the child fell or the trajectory of the fall. However, he did conclude that at the time of the incident the child was with his father, Clarence Kenny, despite the father’s denial. Officer Summers speculated that *950 the ehild’s fall may have been the result of a criminal act by Clarence Kenny. He testified in his deposition that “[0]ne of the issues was ^whether or not the child fell or whether or not the child was pushed or thrown.” As a result of his suspicion of criminal misconduct, he arrested Clarence Kenny and Melissa Simon for cruelty to a juvenile.[6] Subsequently, Antonio was permanently removed from the custody of Clarence Kenny and Melissa Simon and transferred to the care of a public health organization, and thereafter cared for by foster parents.
As noted above, at the time of the accident, the building was owned by Kong Wong, Charlie Tong and Harry Wong, who had leased the building to the Hummingbird Hotel, Inc. The lessees were Harry J. Hillensbeck and Bertha Hillensbeck. The obligations of the lessee were guaranteed by the co-defendants Harry J. Hillensbeck and Bertha Hillensbeck. The June 1,1994 lease provided that the lessee accepts the leased premises in its present condition and agrees to pay to make any repairs, replacements, and alterations necessary to comply with all governmental requirements, including those contained in the New Orleans Building Code and assumed all liability for the premises. Clarence Kenny and Melissa Simon allegedly sublet an apartment from the Hillensbecks/Hum-mingbird Hotel, Inc.
After a hearing on the Wongs’ motion for summary judgment, the trial court ruled in favor of the Wongs, dismissing the plaintiffs’ claims against them. The plaintiffs/appellants are only appealing the judgment insofar as it dismissed their claims against defendant Kong Wong.
| fiSTANDARD OF REVIEW
Appellate courts review grants of summary judgment de novo, using the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate, i.e., whether there is a genuine of material fact and whether the mover is entitled to judgment as a matter of law. Ocean Energy, Inc. v. Plaquemines Parish Gov’t, 2004-0066 (La.7/6/04), 880 So.2d 1. Under Louisiana law, where the party seeking summary judgment will not bear the burden of proof upon a particular element of a claim or cause of an action, that party need not disprove that element in order to obtain summary judgment. Instead, the movant’s entitlement to summary judgment is established upon its pointing out to the court that “there is an absence of factual support for one or more elements essential to the adverse party’s claim.” La. C.C.P. art. 966(C)(2); Racine v. Moon’s Towing, 2001-2837, p. 4 (La.5/14/02), 817 So.2d 21, 24. In defending against a well-taken motion for summary judgment, the plaintiff may not rely upon the allegations contained in his pleadings, simply speculate, or otherwise posit the hypothetical existence of a genuine issue of material fact. Kelly v. AME Janitorial Services Co., 2009-1167, p. 5 (La.App. 4 Cir. 3/3/10), 33 So.3d 358, 361. See La. C.C.P. art. 967(B).
DISCUSSION
The issue presented on appeal is whether the trial court correctly granted summary judgment dismissing the plaintiffs/appellants’ claims against Kong Wong.
|7The appellants assert that the defect in the fire escape was a contributing factor to the fall. Under Louisiana law, *951 the owner/lessor is generally liable for the condition of the leased premises. See Allstate Insurance Company v. Veninata, 2006-1641, p. 4 (La.App. 4 Cir.11/7/07), 971 So.2d 420, 423 and former La. C.C. art. 2695.[7]
However, pursuant to La. R.S. 9:3221, a lessor may shift responsibilities to a lessee, including liability for injury resulting from defects in the property, because contracting parties can waive warranties and obligations in the codal articles and statutes, so long as such waivers do not affect the rights of others and do not harm the public good. Tassin v. Slidell Mini-Storage, Inc., 396 So.2d 1261, 1264 (La.1981)
At the time of Antonio’s accident, La. R.S. 9:3221 provided:
§ 3221. Assumption of responsibility by lessee; liability of owner
The owner of premises leased under a contract whereby the lessee assumes responsibility for their condition is not ha-ble for injury caused by any defect therein to the lessee or anyone on the premises who derives his right to be thereon from the lessee, unless the owner knew or should have known of the defect or had received notice thereof and failed to remedy it within a reasonable time.
Based upon the La. R.S. 9:3221, the lease between Hummingbird Hotel Inc., and Kong Wong as the owner/lessor, Kong Wong could not have had any liability | ^unless the accident was caused by the alleged defect in the leased premises, which Kong Wong knew or should have known about or had received notice of and failed to remedy within a reasonable time.
The sole argument raised by appellants to establish that the defects in the fire escape were so visible that Kong Wong knew or should have known of the defects in the premises is that Kong Wong admitted in his deposition testimony that he occasionally drove by the building. He asserts that he did not think that it was his responsibility to maintain the building or assuring that the building was in compliance with building and fire codes nor did he admit or acknowledge that there were any visible, defects or code violations. There is no evidence to support the appellants’ assertions that the owner of the building, Kong Wong, had any knowledge or notice of the alleged defects. The appellants have failed to prove an essential prong of La. R.S. 9:3221, i.e. owner knowledge and notice. Moreover, the original lease in this matter clearly places any potential liability with the lessees, the Hil-lensbecks and Hummingbird Hotel, Inc.
The appellants also maintain that the fire escape was being used as a balcony thereby creating an unreasonable risk of harm to occupants of the building. In support of their allegation they offered a photograph depicting a chair on the fire escape landing on or around the time of the accident.
The Wongs have established that pursuant to the commercial lease, the Hummingbird Hotel, Inc., and the Hillensbecks have *952 assumed all responsibility for the building and its maintenance and repairs. It is undisputed that at the time of the accident Mr. Wong and the other owners/lessors were not in possession of the Hummingbird Hotel and the lessee, the Hummingbird Hotel, Inc., had contractually assumed all responsibility for repairs, replacements, alterations, and Rbuilding and fire codes compliance of the leased premises. The ownersAessors had no notice or knowledge of any defect in the building or municipal building code violations.
The appellants provided a report from their building expert, Paul Colman, which asserted that the defect in the premises was primarily that the fire escape was being used as a balcony; as such there were building code requirements that were not met. In support of this assertion he notes that in a police accident report there were photographs taken of the fire escape with the chair on it. However, no clear time line has been established to reflect how, why and when the chair was on the fire escape, nor has any direct testimony been provided to establish that the fire escape was being used as a balcony. More important, there is no evidence in the record to establish any connexity whatsoever between the child’s fall and the fire escape. The appellants’ claim that the fire escape was being used as a balcony was pure unsubstantiated speculation and has no causal link to the accident.
Contrarily, Kong Wong provided an affidavit from his expert, Leonard Quick, who maintains that there were no defects or building code violations at the time of the accident. Clearly, the trial court took all of the evidence, testimony and affidavits into consideration when making its decision to grant the Kongs’ motion for summary judgment. Appellants have failed to establish by competent evidence that any actual defects or conditions, at the time of the accident, led to an unreasonable risk of harm relevant to the child’s accident.
The appellants have failed to provide any competent or factual evidence as to what or who caused Antonio to fall. Based on the plaintiffs/appellants’ petition for damages, the depositions of Ms. Gat-terer, Officer Granville, the discovery requests and the entire record, the appellants have never established the cause of | inthe child’s fall nor its relationship to any alleged defect or unreasonable risk of harm in the lease premises.
The record indicates that Clarence Kenny, one of the original plaintiffs in this suit, failed to appear for depositions and respond to motions to compel, and his whereabouts are allegedly in question. The appellants have failed to provide the trial court with any relevant evidence or statement from Clarence Kenny, who the appellants named as a witness in this matter. The appellants’ failure to provide any evidence of Clarence Kenny’s involvement either by written witness statements, deposition or by affidavit in opposition to the Wongs’ motion for summary judgment raises a presumption that his testimony would have been unfavorable to them. See Driscoll v. Stucker, 04-0589, p. 18 (La.1/19/05), 893 So.2d 32, 47 (An adverse presumption exists when a party having control of a favorable witness fails to call him or her to testify, even though the presumption is rebuttable and is tempered by the fact that a party need only put on enough evidence to prove the case. The adverse presumption is referred to as the “uncalled witness” rule and applies when a party has the power to produce witnesses who would elucidate the transaction or occurrence but fails to call those witnesses.)
The record is void of any evidence establishing genuine issues of material fact that would impose liability upon the defendants under appellants’ claims in the original *953 petition; this is fatal to their action. The appellants have failed to establish, by supportable evidence, that at the time of the accident, there were defects in the building or municipal building code violations. They have also failed to establish any causal effect between the child’s fall and alleged defects in the building or municipal building code violations, if any existed. The trial court cannot simply speculate as to the cause of Antonio’s fall and injuries, but must Inlook to probative evidence which the appellants have failed to establish by competent evidence.
Based on the facts, evidence and the record as a whole, we find that there are no genuine issues of material fact in dispute. The appellants are unable to provide factual support sufficient to carry their evidentiary burden at trial. We find that summary judgement in this matter was appropriate. Therefore, we affirm the trial court’s granting of summary judgment and dismissing the appellants’ claims with prejudice.
AFFIRMED
BELSOME, J., concurs with reasons.

. At the present time, several siblings of Antonio Dominique Kenny are his procedural representatives.

. Antonio was born on January 31, 1993 and subsequently died in November of 2005, at the age of twelve.

. Harry Wong died in 1998.

. There is some question as to whether or not she had a community interest in the leased premises as it was Harry Wong's separate property which he inherited from his parents.

. Kinko’s is located directly across the street from the Hummingbird Hotel building on St. Charles Avenue and Julia.

. As per Officer Summers police report, the four other children were removed and placed into protective custody. Melissa Simon and Clarence Kenny were initially charged with juvenile cruelty. After further investigation, they were charged with four additional counts of juvenile cruelty.

. La. C.C. art. 2695 (1870), provided:
The lessor guarantees the lessee against all vices and defects of the thing, which may prevent its being used even in the case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee, and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same.
Former article 2695 was revised by La. Acts 2004, No. 821, § 1, effective Januaiy 1, 2005. The substance of former article 2695 is restated in current La.C.C. arts. 2696 and 2697.