EDWIN A. LOMBARD, Judge.
h The Appellant, Plaintiff Reuben Williams, seeks review of the August 13, 2013 judgment of the district court in favor of Appellees, Defendants Hyman-Moses Properties, L.L.C. and Kornfeld Properties, L.L.C., which denied in part his Motion for New Trial. Pursuant to our de novo review, we reverse the judgment of the district court in favor of Hyman-Moses Properties, L.L.C. and Kornfeld Properties, L.L.C., and remand for further proceedings.
Reuben Williams (“Mr. Williams”) was employed as a parking lot attendant by Premium Parking, L.L.C. (“Premium”) and worked at a parking garage located at 911 Iberville Street (“the Garage”) in New Orleans. Premium began leasing the Garage from building owners, Hyman-Moses *1072 Properties, L.L.C. and Kornfeld Properties, L.L.C. (collectively referred to herein as “the Owners”), pursuant to a lease agreement (“the Lease”) dated October 15, 2009.[1] Later, on August 13, 2010, Mr. Williams sustained severe physical injuries when he slipped off of a wet manlift located inside of and attached to the Garage. It rained on the date of the accident, and Mr. Williams alleges that rainwater fell onto the manlift through the | corrugated steel-paneled cover located above the man-lift (“manlift cover”). The manlift cover is attached to the roof of the Garage.
Mr. Williams subsequently filed suit against: The Three Girls, L.L.C.,[2] R & R Rig Service, Inc. (“R & R”), which is the maintenance company Premium hired to maintain the manlift, and Humphrey Man-lift Company (“Humphrey”), which is the manufacturer of the manlift. He later moved to dismiss The Three Girls, L.L.C., from the lawsuit and filed a supplemental and amending petition naming the Owners as defendants.
In February 2012, the Owners filed a Motion for Partial Summary Judgment asserting that they were not liable for Mr. Williams’ injuries because they had transferred responsibility and liability for any injuries or damages due to any defects in the Garage to Premium in the Lease. The hearing on the motion was held on April 18, 2012, but the district court withheld ruling on the motion to allow Mr. Williams time to conduct further discovery.
Thereafter, the Owners re-urged their Motion for Partial Summary Judgment, which the district court granted on January 2, 2013. Mr. Williams timely filed a Motion for New Trial arguing that the district court erred in granting the Motion for Partial Summary Judgment and further asserting, in the alternative, that the district court should amend the January 2, 2013 judgment to apply La.Code Civ. Proc. art. 966(F).[3] On August 19, 2013, the district court partially 1.-¡granted Mr. Williams’ motion and amended the January 2, 2013 judgment to apply La.Code Civ. Proc. art. 966(F), but denied the motion in all other respects.[4] Mr. Williams *1073 timely filed the instant appeal. Additionally, defendants R & R and Humphrey appealed the district court’s partial grant of the Motion for New Trial as it related to the amending of the January 2, 2013 judgment.
The Appellant raises three (3) issues on appeal:
1. Whether the district court committed a legal error by granting summary judgment based upon the terms of a contract executed between Premium and the Owners, under La. Civ.Code arts. 2696 and 2697.
2. Whether the district court committed a legal error by granting the Owners summary judgment under La.Rev.Stat. 9:3221 when the evidence clearly shows the defect in the premises existed prior to the execution of the Lease between Mr. Williams’ employer and the Owners.
3. Alternatively, whether the district court was correct in partially granting Mr. Williams’ Motion for New Trial, pursuant to La.Code Civ. Proc. art. 966(F).
|4In his first two assignments of error, Mr. Williams contests the district court’s grant of summary judgment in favor of the Owners under La. Civ.Code arts. 2696 and 2697 as well as under La.Rev.Stat. 9:3221.
Regarding La. Civ.Code arts. 2696 and 2697, he argues that the Lease executed between the Owners and Premium is irrelevant because under the aforementioned articles, the Owners warranted that the condition of the property was free of defects. The articles state:
La. Civ.Code. art. 2696
The lessor warrants the lessee that the thing is suitable for the purpose for which it was leased and that it is free of vices or defects that prevent its use for that purpose.
This warranty also extends to vices or defects that arise after the delivery of the thing and are not attributable to the fault of the lessee.
La. Civ.Code art. 2697
The warranty provided in the preceding Article also encompasses vices or defects that are not known to the lessor. However, if the lessee knows of such vices or defects and fails to notify the lessor, the lessee’s recovery for breach of warranty may be reduced accordingly.
Mr. Williams alleges that the holes and openings in the manlift cover are structural in nature and the Owners could have remedied its condition had they performed a cursory inspection to view the defects and repaired the manlift cover. Premium, he argues, did not cause the holes and openings that led to the water intrusion, according to the testimony of Premium representative Sterling Chauvin. However, Mr. Williams argues that Ted Moses, who is the minority owner of Hyman-Moses, L.L.C. and co-manager of the Garage, testified that he was on the roof of the Garage “numerous times” over a 15-20 year period. Thus, Mr. Williams | ¡¡contends that Mr. Moses should have discovered the defective condition of the man-lift cover.
Furthermore, relying upon the affidavit of his engineering expert, Leonard C. Quick, P.E., Mr. Williams argues that the defects at issue pre-dated the Lease and the Owners ignored these defects. He avers that the allegedly rusty and hole-filled condition of the manlift cover created a defective and dangerous condition, which the Owners warranted that they would prevent. Mr. Quick’s attestation to the poor condition of the manlift cover is unre-butted by the Owners. Thus, he avers that it is uncontroverted that the long *1074 standing dilapidated condition of the man-lift cover allowed for water intrusion into the manlift, which caused a hazardous condition. The Owners neither repaired nor inspected the condition of the manlift cover; thus, he argues, they violated the warranty against vices or defects, under La. Civ.Code art. 2696. He further maintains that the warranty extends to vices or defects that arise after the delivery of the thing, but are not attributable to the fault of the lessee.
He further avers that prior to the delivery of the premises to Premium, the Owners warranted that the manlift cover was free from defects and vices. Moreover, the warranty extends to those vices and defects unknown to the lessor. La. Civ. Code art. 2697. Considering that the man-lift cover was riddled with holes and openings that existed prior to the execution of the Lease, Mr. Williams maintains that the Owners violated the warranty against vices or defects because the leased premises were not free of vices and defects prior to delivery of the premises.
Moreover, even if the Lease is relevant, Mr. Williams argues that it placed the obligation to effectuate structural repairs on the Owners:
| ^Lessee shall at the time during the term of this Lease and at its own expense take good care of the leased premises and the fixtures (inclusive of light fixtures), appliances and appurtenances belonging thereto, and keep the same in good order, condition and regain and make all necessary interior repairs thereto, except repairs which are structural in character, or necessitated by fire or other casualty.
Appellate courts review motions for summary judgment de novo on appeal “using the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate, i.e., whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law.” Supreme Services & Specialty Co., Inc., v. Sonny Greer, Inc., 06-1827, p. 4 (La.5/22/07), 958 So.2d 634, 638. Pursuant to La.Code Civ. Proc. art. 966(B)(2), a summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. If the court finds that a genuine issue of material fact exists, then summary judgment must be rejected. Oakley v. Thebault, 96-0937, p. 3 (La.App. 4 Cir. 11/13/96), 684 So.2d 488, 490.
Where the party seeking summary judgment will not bear the burden of proof upon a particular element of a claim or cause of action, that party need not disprove that element in order to obtain summary judgment. Simon v. Hillensbeck, 12-0087, p. 6 (La.App. 4 Cir. 09/19/12), 100 So.3d 946, 949 [citations omitted]. Instead, the movant’s entitlement to summary judgment is established on its pointing out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim. Id.
|7The initial burden of proof remains with the mover to show that no genuine issue of material fact exists; however, if the mover has made a prima facie showing that the motion should be granted, the burden shifts to the non-moving party to present evidence demonstrating that a material factual issue remains. Jones v. Estate of Santiago, 03-1424, p. 5 (La.4/14/04), 870 So.2d 1002, 1006. Nevertheless, the plaintiff opposing the motion “may not rely upon the allegations made in his pleadings, simple speculation as to facts or evidence, or ‘posit the hypothetical existence of a *1075 genuine issue of material fact’ in order to attempt to defeat a well-pled motion for summary judgment.” Simon, 12-0087, p. 6, 100 So.3d. at 950 [citations omitted].
Upon our review of the Lease of the Garage, we note that it contains a clause limiting the responsibility of the Owners to only those damages the Owners failed to commence repairing after being notified by Premium of the damage. The Lease states in relevant part:
10. RESPONSIBILITY FOR DAMAGES
Lessors shall not be responsible for damage to property or injury to person or other losses or damages caused by or resulting from vices or defects, latent or otherwise, including leaks in the roof of the leased premises, unless Lessors failed to take steps toward repairing same within a reasonable period of time after being notified thereof by Lessee.
Lessee shall hold Lessors free of any liability to anybody and everybody for personal injuries or other damages sustained in any manner whatsoever from, on or through or about the leased premises. Leased premises does not include the sidewalk area in front of the retail leased space.
|sWe recognize that the warranty against vices and defects contained in articles 2696 and 2697, may be waived. Tassin v. Slidell Mini-Storage, Inc., 396 So.2d 1261 (La.1981). The warranty provided in La. Civ.Code art. 2696 may be waived by clear and unambiguous language that is brought to the attention of the lessee, under La. Civ.Code art. 2699. Graubarth v. French Mkt. Corp., 07-0416, p. 9 (La.App. 4 Cir. 10/24/07), 970 So.2d 660, 666. Article 2699 of the Louisiana Civil Code states in pertinent part:
The warranty provided in the preceding Articles may be waived, but only by clear and unambiguous language that is brought to the attention of the lessee. Nevertheless, a waiver of warranty is ineffective:
(1) To the extent it pertains to vices or defects of which the lessee did not know and the lessor knew or should have known;
This article, however, should be read in conjunction with La.Rev.Stat. 9:3221, which provides an exception to the application of La. Civ.Code art. 2699:[5]
Notwithstanding the provisions of Louisiana Civil Code Article 2699, the owner of premises leased under a contract whereby the lessee assumes responsibility for their condition is not liable for injury caused by any defect therein to the lessee or anyone on the premises who derives his right to be thereon from the lessee, unless the owner knew or should have known of the defect or had received notice thereof and failed to remedy it within a reasonable time.[6]
In the matter sub judice, the waiver of the warranty against vices or defects was included in Section 10 of the Lease, quoted above. The Lessors absolved themselves of responsibility for vices or defects, even latent ones, in lucid terms | flfor the subject property. Moreover, the clause further states that the Owners are not liable for injuries to the Lessee or to third parties on the premises. We find this to be a clear and unambiguous waiver of the war *1076 ranty against vices or defects, under La. Civ.Code arts. 2696 and 2697. We further note that there has been no argument made by Mr. Williams that this clause was not brought to Premium’s attention at the time the Lease was executed. Additionally, Premium undertook the responsibility of taking care of the leased premises, fixtures, appliances and appurtenances, under the terms of the Lease.
Nevertheless, La.Rev.Stat. 9:3221 provides that a waiver of the warranty for defects is not applicable under two (2) circumstances: 1) when the owner knew or should have known of the defect or 2) when the owner had received notice of the defect and failed to remedy it within a reasonable time. Mr. Williams argues that the former circumstance applies in the instant matter.
He contends that the district court committed a legal error in granting the Owners’ summary judgment under La. Rev.Stat. 9:3221 because the evidence shows that the alleged defect in the premises existed prior to the execution of the Lease between Premium and the Owners, who knew or should have known of the defective condition of the manlift cover for the following reasons:
1) Mr. Moses walked the roof “numerous times” before the contract between Premium and the Owners was executed;
2) there were holes in the manlift cover caused by corrosion, a process taking years to eat through the enclosure;
3) the condition of the manlift cover existed for years;
4) the manlift cover is placed directly above the manlift; and
|105) the defect is structural in nature allowing water onto the manlift. The extent of knowledge possessed by the Owners and whether they acted reasonably must be placed before the trier of fact to determine their liability.
Mr. Williams argues that in consideration of Mr. Moses’ dual role as the manager of the property and a minority owner, Mr. Moses’ actions or omissions are imputed to his employers, the Owners under La. Civ.Code art. 2320.[7] Despite having been on the roof of the subject building numerous times over 15-20 years, Mr. Moses failed to inspect the manlift cover, discover it was defective, and repair its holes and openings, which Mr. Williams claims contributed to his injury.
Lastly, he maintains that summary judgment is seldom appropriate for determinations based on subjective facts, such as motive, intent, good faith, knowledge and malice. Williams v. Asbestos Defendants, 11-0716, p. 5 (La.App. 4 Cir. 5/16/12), 95 So.3d 497, 501. He further relies upon the First Circuit’s holding that issues requiring the determination of reasonableness of acts and conduct of the parties under all facts and circumstances of the case cannot In ordinarily be disposed of by summary judgment. Granda v. State Farm Mut. Ins. Co., 04-1722 (La.App. 1 Cir. 2/10/06), 935 So.2d 703.
*1077 In response, the Owners maintain that they had no knowledge of the alleged defect. Mr. Moses testified that he was the co-manager of the 911 Iberville Street building with his uncle, Dr. Harris Hyman. Mr. Moses did not recall the condition of the manlift cover prior to the Lease at issue going into effect, although he testified that he walked on the top of the roof, where the manlift cover is located, numerous times over 15 to 20 years. He testified that it had been attached to the roof of the building for twenty years, which is as long as he had been managing the property. He further explained that the Owners did not have an inspection process, but Lessees would notify them of issues that needed to be addressed.
If we were to impute Mr. Moses’ knowledge of the premises to the Owners as a whole, we might conclude that the Owners did not know of the alleged defective condition of the manlift cover. However, it is more unclear whether the Owners should have known of the alleged defective condition of the manlift cover.
The affidavit of Mr. Quick indicates that the condition of the shed had deteriorated over a period of years. Indeed, paragraphs 11 and 12 of Mr. Quick’s affidavit state:
11. The forensic physical evidence revealed that the manlift enclosure located at the top of the parking garage structure contains numerous openings, holes and unsealed penetrations caused by long-term neglect and lack of proper maintenance resulting in the gross degradation of the enclosure for it [sic] design intent and purpose, that is, to protect against rainwater infiltration directly at, around and onto the manlift treads and other mechanical components through the corroded holes in the panels and/or un flashed openings. The holes in the enclosure allow wind-driven rain to infiltrate into the interior of the structure. Proper design and maintenance of the enclosure would \ V¿have eliminated these holes and the typical wind-driven rain that otherwise has infiltrated through these defective conditions for years prior to the accident of Mr. Williams. Reference attached photographs for examples of the defective conditions.
12. The manlift enclosure consists of corrugated, galvanized steel panels. Long-term deterioration of the galvanized steel panels at the enclosure was immediately evident with multiple panels displaying a complete absence of the protective zinc coating in exposed locations. With the long-term loss of the zinc coating, corrosion (rust) of the unprotected steel panels occurred throughout the exterior of the enclosure resulting in holes through which water readily infiltrated. This type of corrosive deterioration takes years to occur and develop to the degree of actual holes resulting in the panel. Furthermore, long-term neglect and lack of any supplemental coatings resulted in advanced forms of corrosion, such as scaling, pitting and perforation (complete rust-through) of the steel panels. The forensic physical evidence and aerial imagery sources revealed that the rusted condition of the enclosure has existed for numerous years, and had existed for several years prior to transfer of the parking garage to Premium Parking, L.L.C. on or about November 1, 2009. [Emphasis added].
The length of time between the October 2009 execution of the Lease and Mr. Williams August 2010 accident was less than a year. Consequently, if the condition of the manlift cover had been deteriorating over years, based upon Mr. Quick’s *1078 affidavit, the deterioration had to have begun prior to execution of the Lease and Premium’s tenancy. Thus, we find that there is a genuine issue of material fact as to whether the Owners knew or should have known about the alleged deterioration of the manlift cover prior to the execution of the Lease, under La.Rev.Stat. 9:3221. See Harvey v. Francis, 00-1268, p. 4 (La.App. 4 Cir. 3/21/01), 785 So.2d 893, 896-97.
1 ^Consequently, we pretermit further discussion of Mr. Williams’ remaining assignment of error as well as those assignments raised by Appellees, Humphrey Manlift and R & R, in their respective answers to the appeal, as they are now moot.
DECREE
For the foregoing reasons, the August 19, 2013 judgment of the district court is reversed and this matter is remanded for further proceedings.
REVERSED AND REMANDED.
TOBIAS and LANDRIEU, JJ., concurs.

. According to the testimony of Ted Moses, who is a minority owner and co-manager of the Garage, "Standard Parking” leased the Garage prior to November 1, 2009. Thus, this was Premium's initial lease of the building.

. Mr. Williams initially believed The Three Girls, L.L.C. to be the owner of the Garage.

. The wording of former La.Code Civ. Proc. art. 966(F) is now codified in section (G) of art. 966:
G. (1) When the court grants a motion for summary judgment in accordance with the provisions of this Article, that a party or nonparty is not negligent, not at fault, or did not cause, whether in whole or in part, the injury or harm alleged, that party or nonparty shall not be considered in any subsequent allocation of fault. Evidence shall not be admitted at trial to establish the fault of that party or nonparty nor shall the issue be submitted to the jury nor included on the jury verdict form. This Paragraph shall not apply when a summary judgment is granted solely on the basis of the successful assertion of an affirmative defense in accordance with Article 1005, except for negligence or fault.
(2) If the provisions of this Paragraph are applicable to the summary judgment, the court shall so specify in the judgment. If the court fails to specify that the provisions of this Paragraph are applicable, then the provisions of this Paragraph shall not apply to the judgment.

.The August 19, 2013 judgment provides in pertinent part:
IT IS ORDERED, ADJUDGED, AND DECREED that the Motion for New Trial is granted in part amending the original judgment to provide that judgment is granted pursuant to C.C.P. Art. 966(F)(1) & (2).
Additionally, the district court designated this judgment as final under La.Code Civ. Proc. art. 1915(B)(1).

. See Wells v. Norris, 46,458, p. 6 (La.App. 2 Cir. 8/10/11), 71 So.3d 1165, 1169, writ denied, 11-1949 (La.11/18/11), 75 So.3d 465.

. Pursuant to this statute, a lessor transferring responsibility for the leased premises to the lessee is not required to utilize "clear and unambiguous language that is brought to the attention of the lessee,” as required by La. Civ.Code art. 2699.

. La. Civ.Code art. 2320, provides:
Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed.
Teachers and artisans are answerable for the damage caused by their scholars or apprentices, while under their superintendence.
In the above cases, responsibility only attaches, when the masters or employers, teachers and artisans, might have prevented the act which caused the damage, and have not done it.
The master is answerable for the offenses and quasi-offenses committed by his servants, according to the rules which are explained under the title: Of quasi-contracts, and of offenses and quasi-offenses.