| | | |
|---|---|---|
| **BENJAMIN CROSBY AND BENTEX ASSOCIATES, INC.** | * | NO. 2024-CA-0029 |
| | * | |
| **VERSUS** | | COURT OF APPEAL |
| | * | |
| **SAHUQUE REALTY COMPANY, INC., AND LATTER & BLUM PROPERTY MANAGEMENT, INC., ABC INSURANCE COMPANY AND XYZ INSURANCE COMPANY** | * | FOURTH CIRCUIT |
| | * | STATE OF LOUISIANA |
| | * * * * * * * | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2009-11421 C\W 2010-06486, DIVISION "D"
Honorable Monique E. Barial, Judge
* * * * * *
**Judge Karen K. Herman**
* * * * * *
(Court composed of Judge Sandra Cabrina Jenkins, Judge Tiffany Gautier Chase, Judge Karen K. Herman)


Benjamin F. Crosby
7425 Wilson Road
West Palm Beach, FL 33413

      PLAINTIFF/APPELLANT, *Pro Se*


Lance B. Williams
Briana E. Whetstone
McCRANIE SISTRUNK ANZELMO HARDY MCDANIEL & WELCH, LLC
195 Greenbriar Boulevard, Suite 200
Covington, LA 70433

      COUNSEL FOR DEFENDANT/APPELLEE


          **AFFIRMED**
          **AUGUST 13, 2024**

KKH
SCJ
TGC

This appeal stems from a landlord-tenant dispute concerning damages to moveable property allegedly due to water intrusion in the leased property. Plaintiff, Benjamin F. Crosby ("Crosby")[1] seeks review of: 1) the August 5, 2022 judgment granting summary judgment in favor of defendant, Sahuque Realty Co., Inc. ("Sahuque"), on its reconventional demand for indemnity against Crosby; and 2) the September 11, 2023 judgment awarding Sahuque attorneys' fees and costs pursuant to an indemnity clause contained in the lease. For the reasons set forth below, we affirm both judgments.

## FACTS AND PROCEDURAL HISTORY

This case has a protracted procedural history, including four prior appeals.[2]

_____

[1] Bentex Associates, Inc., named as a plaintiff in the petition for damages, is no longer a party to this action.

[2] *Crosby v. Sahuque Realty Co. Inc.*, 2012-1537, 1538 (La. App. 4 Cir. 8/21/13), 122 So.3d 1197 ("*Crosby 1*") (appeal of the January 28, 2011 judgment sustaining Sahuque's exception of prescription); *Crosby v. Sahuque Realty Co. Inc.*, 2017-0424 (La. App. 4 Cir. 12/28/17), 234 So.3d 1190 ("*Crosby 2*") (appeal of the November 14, 2016 judgment granting Sahuque's motion for summary judgment); *Crosby v. Sahuque Realty Co. Inc.*, 2021-0167 (La. App. 4 Cir. 10/13/21), 366 So.3d 123 ("*Crosby 3*") (appeal of the December 3, 2019 judgment granting Sahuque's motion for summary judgment motion on the lease waiver provisions), and *Crosby v. Sahuque Realty Co. Inc.*, 2023-0012 (La. App. 4 Cir. 8/14/23), 370 So.3d 1206 ("*Crosby 4*") (first appeal of the August 5, 2022 judgment granting Sahuque's motion for summary judgment motion on its reconventional demand. The appeal in *Crosby 4* was dismissed as untimely and remanded).

1

The facts of this case have been articulated by this Court in *Crosby 2*:

Mr. Crosby, an interior designer, founded his company Bentex, through which Mr. Crosby purchased textiles that Bentex would convert into draperies, rugs, upholstery, bedding, wall covering, and other furnishings. Bentex would then sell the finished products to hotels, cruise ships, and other buyers nationwide.

Mr. Crosby leased three apartments owned by Sahuque, and later managed by Latter & Blum Property Management, Inc., at 708 Orleans Avenue in the New Orleans French Quarter. Mr. Crosby, whose primary residence is in Florida, used two of the apartments as his second home until September 2008. Bentex leased the third apartment for use as a decorated showroom.

Mr. Crosby and Bentex initially entered into written lease contracts for the apartments. A provision included in the leases waived Sahuque's liability for "any injury or damages to any property or to any person on or about the leased premises or for any injury or damage to any property of lessee." The leases further stated that, if the property suffered partial but reparable destruction, the lessor could choose to cancel the lease or instead repair the damage after notification to the lessee. The leases also contained a provision that purported to release Sahuque of any responsibility for water damage "unless same is caused by lessor's failure to comply with any obligations expressly assumed in this lease." After the leases expired on December 31, 2004, Mr. Crosby and Bentex continued leasing the properties pursuant to an oral agreement on a month-to-month basis.

Sahuque admitted that on at least five occasions between 1995 and 2000, rain events caused water to flow into the apartments and cause damage to plaintiffs' property. During plaintiffs' occupancy, from the mid-1990s until June 2009, plaintiffs experienced water intrusion into the apartments that damaged plaintiffs' movable property, including interior furnishings, draperies, and artwork.

\*\*\*

Plaintiffs filed their original petition [o]n October 26, 2009, alleging that defendants breached duties they owed pursuant to the lease contracts and under law. Plaintiffs alleged that despite repeated notice, defendants failed to make necessary repairs to weatherproof the leased property. Plaintiffs averred that the units became infested with mold, causing Mr. Crosby to seek medical treatment. The original petition sought damages for Mr. Crosby's personal injuries, medical expenses, and for mold contamination and resulting damages to personal property. Plaintiffs [also claimed] defendants failed to properly weatherproof and make necessary repairs to the leased property constituting a continuing tort, because the operating cause of

2

the injury was ongoing and gave rise to successive damages. Defendants disputed plaintiffs' claims, arguing that the alleged damages resulted from the separate weather-related occurrences of water intrusion into the units, rather than from defendants' continuous tortious conduct. Defendants filed an exception of prescription, which the trial court granted; however, this Court reversed on appeal. [*Crosby v. Sahuque Realty Co., Inc.*, 2012-1537 (La. App. 4 Cir. 8/21/13), 122 So.3d 1197 (finding that the trial court relied on evidence not properly introduced into the record)].

Sahuque reasserted its exception of prescription on remand. The trial court found that because plaintiffs filed suit in October 2009, plaintiffs' claim regarding the January 2009 rain event was within the one-year liberative prescription period. The trial court also found that plaintiffs' claim based on the August 2008 rain event was not prescribed. The trial court determined in light of the parties' January 2009 agreement, which Mr. Crosby memorialized, defendants had lulled plaintiffs into inaction, as contemplated by the doctrine of contra non valentum. Therefore, on April 2, 2014, the trial court partially granted the exception, concluding that only plaintiffs' claims relating to the August 2008 and January 2009 rain events were not prescribed.

\*\*\*

Thereafter, Sahuque filed a motion for summary judgment. At the hearing, Sahuque argued that Mr. Crosby failed to produce an expert witness to establish that the August 2008 and January 2009 water intrusion events were the cause-in-fact of Mr. Crosby's damages. Mr. Crosby submitted an engineer report which he alleges established that the 2008 and 2009 water intrusion events caused the mold found in the units. Additionally, Mr. Crosby submitted a detailed, sworn affidavit, including specific statements that the August 2008 water intrusion event caused mold to propagate in the units, rendering his personal property toxic and unusable. Mr. Crosby also attached an inventory of the "personal property damaged by exterior water intrusion or mold infestation/contamination or both from August 21, 2008 forward to June, 2009."

The trial court found Mr. Crosby failed to establish what damages were caused by the non-prescribed August 2008 and January 2009 water intrusion events. The trial court also rejected Mr. Crosby's affidavit as "self-serving" and determined that Mr. Crosby failed to corroborate his testimony with the testimony or affidavit of an independent eye-witness. The trial court granted summary judgment in November 2016, and dismissed Mr. Crosby's remaining claims with prejudice.

3

*Crosby 2,* 2017-0424, pp. 1-5, 234 So.3d at 1193-1195, as restated in *Crosby 3,* 2021-0167, pp. 1-3, 366 So.3d at 125-127.

On appeal in *Crosby 2*, this Court found no error in the trial court's ruling partially granting Sahuque's exception of prescription regarding Crosby's pre-2008 claims. *Crosby 2*, 2017-0424, p. 17, 234 So.3d at 1201. However, we determined that genuine issues of material fact existed regarding causation of damages to Crosby's movable property making summary judgment inappropriate. *Id.* As such, we reversed the trial court's ruling and remanded for further proceedings.

Thereafter, we stated as follows in *Crosby 3*:

On June 3, 2019, Sahuque conducted a second deposition of Mr. Crosby.[3] This deposition focused primarily on Mr. Crosby's damages and the terms of the 2003 lease agreement between he and Sahuque.

On September 11, 2019, Sahuque filed a second motion for summary judgment arguing that no genuine issue of material fact exists as to the waiver of liability provided in three lease provisions of the 2003 lease agreement. Specifically, Sahuque maintained that Sections 19, 21, and 25 of the 2003 lease agreement preclude liability for Mr. Crosby's personal property damage claim. In support of its motion for summary judgment, Sahuque attached: (1) the 2019 deposition transcript of Mr. Crosby; (2) 2003 lease agreements for apartment A and apartments B and C; (3) the original and supplemental and amending petitions for damages; and (4) excerpts of Mr. Crosby's 2010 deposition.

Mr. Crosby opposed Sahuque's motion for summary judgment, arguing that the matter was not ripe for summary judgment because there are genuine issues of material fact as to the existence of a defect posing an unreasonable risk of harm; Sahuque's breach of warranty that the premises were free from defects and for failing to weatherproof the exterior of the building; the amount of damages recoverable; that the 2003 lease agreement does not contain a clear and unambiguous waiver of liability; and lack of adequate or substantial discovery. In support of his opposition, Mr. Crosby filed (1) the April 2, 2014 trial court judgment and reasons for judgment;

_____
[3] Sahuque first conducted Mr. Crosby's deposition in 2010.

(2) the supplemental and amending petition for damages; (3) his affidavit; (4) the Vieux Carre Commission permit; and (5) the March 24, 2014 trial court hearing transcript.

A hearing on Sahuque's motion for summary judgment was held on November 8, 2019. Mr. Crosby was not allowed to present argument to the trial court because his opposition to the motion for summary judgment was untimely. The hearing proceeded with only Sahuque's argument and no evidence was formally introduced into the record. The trial court granted Sahuque's motion for summary judgment reasoning that by signing the 2003 lease agreement, Mr. Crosby accepted Sections 19, 21, and 25, relieving Sahuque of liability for property damage and accepted the property in its existing condition. The trial court's ruling was memorialized by judgment dated December 3, 2019. On April 23, 2021, the trial court issued a certification order designating the December 3, 2019 judgment as a final appealable judgment pursuant to La. C.C.P. art. 1915(B).

*Crosby 3,* 2021-0167, p. 4-5, 366 So.3d at 127-128.

In rendering an opinion in *Crosby 3*, we held:

In the case *sub judice*, the waiver against vices and defects is contained in Sections 19, 21 and 25 of the 2003 lease agreement. Mr. Crosby does not dispute that he in fact signed the 2003 lease agreement. Although the 2003 lease agreement ended December 31, 2004, in his 2010 deposition Mr. Crosby testified that he understood he remained under the same terms and conditions of the 2003 lease agreement during the duration of his month-to-month lease. The language contained in the waiver clearly and unambiguously waives any claim for damages to Mr. Crosby's personal property against Sahuque as a result of water intrusion into the leased premises.

We likewise find no merit to Mr. Crosby's claim that the waiver of warranty is invalid because it was not brought to his attention. La. C.C. art. 2699 read *in pari materia* with La. R.S. 9:3221 provides a statutory exception to La. C.C. art. 2699, wherein the lessee assumes responsibility for the condition of the leased premises.[4] *See Williams v. Three Girls, L.L.C.*, 2013-1589, p. 8 (La. App. 4 Cir. 6/25/14), 142 So.3d 1071, 1075. Mr. Crosby waived his right to any damage claim to his personal property and assumed liability for the

___

[4] La. R.S. 9:3221:

Notwithstanding the provisions of [La. C.C. art.] 2699, the owner of premises leased under a contract whereby the lessee assumes responsibility for their condition is not liable for injury caused by any defect therein to the lessee or anyone on the premises who derives his right to be thereon from the lessee, unless the owner knew or should have known of the defect or had received notice thereof and failed to remedy it within a reasonable time.

5

condition of the property through his acceptance of Sections 19, 21 and 25 of the 2003 lease agreement. "Louisiana cases have upheld the validity of transfer of liability provisions ... in the context of a lease of immovable property." *Ford v. Bienvenu*, 2000-2376, pp. 7-8 (La. App. 4 Cir. 8/29/01), 804 So.2d 64; *See 132 Chau v. Takee Outee of Bourbon, Inc.*, 1997-1166, p. 5 (La. App. 4 Cir. 2/11/98), 707 So.2d 495, 498. Further, "[t]he law does not require that the provision be brought to the plaintiff's attention or that it be explained...." *Ford*, 2000-2376, pp. 8-9, 804 So.2d at 70.[5]

The warranty waiver contained in the 2003 lease agreement clearly and unambiguously excludes liability for damages caused by defects to the leased premises, i.e. water intrusion. The deposition testimony of Mr. Crosby, in 2019, further illustrates his consent to the waiver and acceptance of the existing condition of the premises. Mr. Crosby signed the lease and is thus "bound to know and understand the provisions of the lease." *Id.*, 2000-2376, p. 11, 804 So.2d at 71.

Accordingly, we find no genuine issue of material fact as to whether the waiver contained in the 2003 lease agreement, which excluded liability, applies to the August 2008 and January 2009 water intrusion events. As such, the trial court did not err in granting Sahuque's motion for summary judgment.

*Id.* at pp. 11-12, 366 So.3d at 131-132.

Subsequent to our opinion in *Crosby 3*, the matter was once again brought before the trial court. The record reflects that in November 2016, Sahuque filed a reconventional demand seeking indemnity from Crosby pursuant to an indemnity clause contained in the lease. In March 2022, Sahuque filed a motion for summary judgment, on that reconventional demand. That matter was heard May 27, 2022, and the trial court rendered

---

[5] La. C.C. art. 2699 was amended with an effective date of January 1, 2005 as follows:

The warranty provided in the preceding Articles may be waived, but only by clear and unambiguous language that is brought to the attention of the lessee. Nevertheless, a waiver is ineffective

(1) To the extent it pertains to vices or defects of which the lessee did not know and the lessor knew or should have known;

(2) To the extent it is contrary to the provisions of Article 2004; or

(3) In a residential or consumer lease, to the extent it purports to waive the warranty for vices or defects that seriously affect health or safety.

judgment August 5, 2022, granting Sahuque's motion for summary judgment on the reconventional demand.  The judgment provides, in pertinent part:

> By contract, Benjamin Crosby is liable to Sahuque Realty Company, Inc. for the total amount of all liabilities, expenses, and reasonable attorneys' fees incurred by or on behalf of Sahuque Realty Company, Inc. in this litigation since the inception of this litigation in October 2009, regardless of whether the claims were filed by Benjamin Crosby or Bentex Associates, Inc. ***Said amount will be set pursuant to a subsequent hearing before this Court following Defendant's filing of a Motion to Set Fees and Costs.*** (Emphasis added).

On appeal, this Court determined that the August 5, 2022 judgment required the parties to take further action (filing a motion to set fees and costs). Thus, it was not a final judgment, and the Court lacked jurisdiction over the appeal.  *Crosby 4,* 2023-0012, p. 6, 370 So.3d at 1211.  We noted therein that Crosby would have an opportunity to review the judgment "in connection with an unrestricted appeal of a final judgment, once rendered, in this matter." *Id.* at p. 9, 370 So.3d at 1212-13.

Subsequent to our ruling in *Crosby 4*, Sahuque filed a Motion to Set Amount of Attorneys' Fees and Costs in connection with the August 5, 2022 judgment.  The matter was heard January 20, 2023, wherein Sahuque introduced documentation regarding attorneys' fees and costs.  Judgment was rendered January 20, 2023, and signed September 11, 2023,[6] in favor of Sahuque, awarding $225,640.50 in attorneys' fees and $11,527.77 in costs.  The judgment was rendered final and appealable pursuant to La. C.C.P. art. 1915(B).

---

[6] The record reflects that matter was heard by Inemesit O'Boyle, judge *pro tempore*, and judgment was signed by Judge Monique Barial, after judge O'Boyle's term ended.

Crosby now appeals the August 5, 2022 judgment granting Sahuque's motion for summary judgment on its reconventional demand, and the September 11, 2023 judgment awarding Sahuque attorneys' fees and costs. Crosby asserts that the trial court erred in: 1) granting Sahuque's motion for summary judgment on its reconventional demand, finding Crosby liable for the total amounts Sahuque incurred in defending this action; and 2) granting a money judgment in favor of Sahuque despite a lack of evidence. In the alternative, Crosby avers that "if the statements of Sahuque's unsworn lawyer are to be construed as evidence, then the District Court erred by failing to afford Crosby an opportunity to cross-examine the unsworn lawyer…."

## LAW AND ANALYSIS

### *Summary Judgment Principles and Standard of Review*

Appellate courts review the grant or denial of a summary judgment motion *de novo* using the identical criteria that trial courts use to determine whether summary judgment is proper. *See Planchard v. New Hotel Monteleone, LLC*, 2021-00347, p. 2 (La. 12/10/21), 332 So.3d 623, 625 (citations omitted). "After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3). The mover bears the burden of proof. La. C.C.P. art. 966(D)(1). When the mover will not bear the burden of proof at trial, the mover need not negate all essential elements of the adverse party's claim. *Id*. Rather, the mover need only point out the absence of factual support for

8

one or more elements of the adverse party's claim. *Id*. The burden then shifts to the adverse party "to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." *Id.*

The summary judgment procedure is favored and "designed to secure the just, speedy, and inexpensive determination of every action." La. C.C.P. art. 966(A)(2). The summary judgment procedure is designed to pierce the pleadings and to assess the evidence to determine if any genuine issue of material fact exists warranting a trial. *See Cutrone v. English Turn Prop. Owners Ass'n, Inc.*, 2019-0896, p. 7 (La. App. 4 Cir. 3/4/20), 293 So.3d 1209, 1214 (quoting *Bridgewater v New Orleans Reg'l Transit Auth.*, 2015-0922, p. 4 (La. App. 4 Cir. 3/9/16), 190 So3d. 408, 411). A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on the issue, and the granting of summary judgment is appropriate. *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512, p. 27 (La. 7/5/94), 639 So.2d 730, 751 (citations omitted). "A fact is 'material' when its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery." *Id*.

***The August 5, 2022 judgment granting Sahuque's motion for summary judgment on its reconventional demand.***

Sahuque asserted in its reconventional demand that SECTION TEN of the 2003 leases requires Crosby to indemnify Sahuque for all amounts incurred in defending the claims brought in this litigation. It provides:

**SECTION TEN**
**INDEMNITY**

9

> *Lessee shall indemnify lessor against any and all expenses. liabilities, and claims of every kind, including reasonable attorneys' fees, by or on behalf of any person or entity arising out of* either: (1) a failure by lessee to perform any of the terms or conditions of this lease agreement; (2*) any injury or damage happening on or about the leased premises*; (3) failure to comply with any law of any governmental authority; or (4) any lien or security interest filed against the leased premises or equipment, materials, or alterations of buildings or improvements on the leased premises. (Emphasis added).

Sahuque maintains that the claims of this litigation indisputably arise out of injury or damage occurring on the leased premises.

In its motion for summary judgment on the reconventional demand, Sahuque argued that the unambiguous language of SECTION TEN requires Crosby to indemnify Sahuque for all attorneys' fees and costs incurred in these proceedings. In support, Sahuque relied on the language contained in the leases and on Crosby's 2019 deposition testimony wherein he stated that he understood and accepted the SECTION TEN indemnity clause.

The only evidence presented by Crosby in opposition to Sahuque's motion for summary judgment was this Court's opinion in *Crosby 2* and various pleadings filed in these proceedings.[7] Crosby argued before the trial court that SECTION TEN of the lease is ambiguous and should be construed against Sahuque.

In granting the motion for summary judgment in favor of Sahuque, the trial court stated in pertinent part:

> So in response to Mr. Crosby's petition, Sahuque filed a reconventional demand in order to enforce the contractual indemnity provision found in Section 10 of the 2003 leases. The reconventional demand states in pertinent part, "...pursuant to the lease agreements,

---

[7] Crosby submitted the following exhibits in opposition to the motion for summary judgment: (A) This Court's opinion in Crosby 2; (B) Crosby's Motion and Order for Devolutive Appeal from the April 23, 2021 judgment; (C) Crosby's Petition and First Supplemental and Amending Petition; and (D) Sahuque's Answer and Jury Demand.

Crosby must indemnify Sahuque for all expenses, including attorney's fees incurred by Sahuque, in the defense of all claims asserted in the Petition for Damages arising out of wrongful eviction and first supplemental and amended petition.["]

The issue regarding this motion is whether the unambiguous language of Section 10 of the 2003 leases requires Mr. Crosby to indemnify Sahuque for all amounts incurred in defending the claims brought in this litigation.

\*\*\*

The language of Section 10 is clear. The lease agreement requires Mr. Crosby to indemnify Sahuque for all expenses, liabilities and attorney's fees incurred in defending claims for injury or damage occurring on the leased premises. Sahuque has defended Mr. Crosby's claims from the inception of this lawsuit in October of 2009 and it has simultaneously defended Bentex's claims until 2016 when the company was dismissed from the suit. By contract, Mr. Crosby is liable for the total amounts Sahuque incurred in defending all claims regardless of who brought the claim. Section 10 of the 2003 leases were not scratched out, deleted or altered in any way and there has been no showing that this section is ambiguous. Mr. Crosby signed the lease agreements, he agreed to the indemnity provision of Section 10, and Section 10 requires him to indemnify Sahuque for all expenses, liabilities and reasonable attorney's fees incurred in defending all claims asserted in this litigation. For these reasons, the Motion for Summary Judgment is hereby granted.

In our review of the trial court's judgment, we recognize the well-established principles of contract interpretation recently reiterated by this Court in *1955 Nola Holdings, L.L.C., v. Windy Hill Pictures L.L.C.*, 2023-0050, p. 11, (La. App. 4 Cir. 10/2/23), 376 So.3d 200, 208, as follows:

"Interpretation of a contract is the determination of the common intent of the parties." La. C.C. art. 2045. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. C.C. art. 2046. "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La. C.C. art. 2050.

For purposes of contract interpretation, "[a] contract is considered ambiguous on the issue of intent when either it lacks a provision bearing on that issue, the terms of a written contract are susceptible to more than one interpretation, there is uncertainty or

11

ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed." *Andry v. Omega Hosp., LLC*, 2019-0459, p. 6 (La. App. 4 Cir. 11/6/19), 282 So.3d 1170, 1174 (quoting *Campbell v. Melton*, 2001-2578, p. 6 (La. 5/14/02), 817 So.2d 69, 75).

Moreover, it is well-established that "[t]he interpretation of the language of a contract is a question of law subject to the *de novo* standard of review on appeal, while factual determinations are subject to the manifest error standard of review." *TKTMJ, Inc. v. Sewerage and Water Bd. of New Orleans*, 2020-0154, p. 5 (La. App. 4 Cir. 12/16/20), 366 So.3d 276, 283 (quoting *Bodenheimer v. Carrollton Pest Control & Termite Co.*, 2017-0595, p. 7 (La. App. 4 Cir. 2/14/18), 317 So.3d 351, 357).

After considering the record, we find, as did the trial court, that the language of SECTION TEN is clear and explicit, requiring Crosby to indemnify Sahuque for attorneys' fees and costs incurred in connection with this litigation. Additionally, it is evident from Crosby's 2019 deposition testimony that he read and understood SECTION TEN and agreed to its terms when he signed the 2003 leases.[8] Crosby's testimony also reveals that he deleted and initialed other unrelated portions of the leases to which he did not agree. However, he did not seek to alter the terms of SECTION TEN. It is also important to note that Crosby was fully aware that the apartments had a history of water intrusion, causing damage to his personal property, when he renegotiated the 2003 leases.

We further find no merit in Crosby's argument that the indemnity claim for attorneys' fees and expenses was not triggered here because

---

[8] Mr. Crosby took issue with the wording of subsection (3) of SECTION TEN. However, subsection (3) is not relevant to the claims made in this litigation.

Sahuque never paid an expense that was the legal responsibility of Crosby, *i.e.*, a third-party claim. Our jurisprudence provides that "[a]s a general rule, attorney fees are not allowed in Louisiana unless they are authorized by statute or provided for by contract." *Langley v. Petro Star Corp. of La.*, 2001-0198, p. 3 (La. 6/29/01), 792 So.2d 721, 723 (citation omitted).

In the present case, the 2003 leases clearly provide that Crosby would indemnify Sahuque "against any and all expenses, liabilities, and claims of every kind, including reasonable attorneys' fees, by or on behalf of any person or entity arising out of . . . any injury or damage happening on or about the leased premises." Moreover, contrary to Crosby's claims, there is no language contained in SECTION TEN to indicate that the indemnity provision applied only to third-party claims.

Finally, Crosby has asserted that Sahuque failed to timely raise the indemnity claim or seek attorneys' fees in its Answer and Jury Demand filed October 27, 2010. We find no merit in this argument. The record demonstrates that on December 11, 2009, Sahuque filed an Answer to Crosby's original petition for damages, requesting "all attorneys' fees and cost incurred in the proceedings." Additionally, in 2016, Sahuque filed a reconventional demand seeking indemnity for "all cost of these proceedings and attorneys' fees." Thereafter, following this Court's opinion in *Crosby 4* (finding that Crosby's damage claims were deemed waived), Sahuque's indemnity claim was brought before the trial court on its motion for summary judgment.

In conclusion, after our *de novo* review of the record, we find that Sahuque properly supported its motion for summary judgment with

competent evidence, while Crosby presented no evidence in rebuttal to establish the existence of a material issue of fact. Accordingly, we find no error on the part of the trial court in granting Sahuque's motion for summary judgment on its reconventional demand.

***The September 11, 2023 judgment awarding Sahuque attorneys' fees and costs.***

Crosby submits that the trial court erred in awarding Sahuque attorneys' fees and costs despite Sahuque's failure to introduce competent evidence. More specifically, he argues that Sahuque's attorney never called any witnesses (including himself) to testify. Thus, he made unsworn statements in support of the motion to set fees and costs. Crosby maintains that because Sahuque's attorney was not sworn as a witness, he was not legally authorized to authenticate any of the supporting documents. We find this argument to be without merit.

Sahuque's attorney did not testify at trial. However, he presented a sworn affidavit and accompanying documents reflecting his law firm's fees/billing and the costs incurred in connection with the litigation. This Court has consistently held that "[a] reasonable attorney's fee is decided on a case-by-case basis and a court does not have to hear evidence concerning time spent or hourly rates charged in order to make an award since the record will reflect much of the services rendered." *Burgess v. Shi Gang Zheng*, 2017-0665, p. 17 (La. App. 4 Cir. 10/10/18), 257 So.3d 764, 775-76 (quoting *1100 S. Jefferson Davis Parkway, LLC v. Williams,* 2014-1326, p. 11 (La. App. 4 Cir. 5/20/15), 165 So.3d 1211, 1220).

14

We also find no merit in Crosby's assertion that the documents were not introduced into evidence and were not accepted by the trial court. A review of the transcript shows otherwise. Sahuque's attorney specifically sought to introduce his affidavit and supporting documents, which the trial court readily accepted. Crosby failed to object, in any manner, to the introduction of evidence. This Court has recognized that the "[f]ailure to object to the introduction of evidence constitutes a waiver of the right to object to the introduction of evidence on appeal." *Davis v. Recreation Dep't*, 2012-1273, p. 12 (La. App. 4 Cir. 1/30/13), 107 So.3d 1254, 1260 (citation omitted).

In the alternative, Crosby asserts that the trial court failed to afford him the opportunity to cross-examine Sahuque's attorney. We are not persuaded by this assertion. The record is devoid of any request by Crosby to question or cross-examine Sahuque's attorney.

Regarding the fees and costs awarded by the trial court, Crosby does not contend that the amounts were incorrect or unreasonable. Nevertheless, we have reviewed the record to ascertain whether there is any error in that regard.

As this Court recently recognized:

> "A trial court's award of attorney fees is reviewed using an abuse of discretion standard." *Greenblatt v. Sewerage & Water Bd. of New Orleans*, 2019-0694, p. 12 (La. App. 4 Cir. 12/20/19), 287 So. 3d 763, 771. "The Louisiana Supreme Court stated that in applying the standard, 'the role of the reviewing court is not to determine what it considers to be an appropriate award, but rather it is to review the exercise of discretion by the trier-of-fact.' " *Id*. (quoting *Covington v. McNeese State Univ.*, 12-2182, p. 11 (La. 5/7/13), 118 So. 3d 343, 351).

15

*Ramelli Janitorial Serv., Inc. v. IV Waste, L.L.C.*, 2023-0128, p. 4 (La. App. 4 Cir. 12/8/23), 381 So.3d 757, 761, *writ denied*, 2024-00037 (La. 2/27/24), 379 So.3d 1268.

Factors to be considered in evaluating the reasonableness of an award of attorneys' fees award include:

> (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) amount of money involved; (5) extent and character of the work performed; (6) legal knowledge, attainment, and skill of the attorneys; (7) number of appearances made; (8) intricacies of the facts involved; (9) diligence and skill of counsel; and (10) the court's own knowledge.

*Id.,* at p. 14, 381 So.3d at 766 (citation omitted); *See also Burgess*, 2017-0665, pp. 17-18, 257 So.3d at 776.

At trial, Sahuque's lead attorney introduced his November 17, 2022 sworn affidavit, which included a statement regarding the education, background, and experience of the law firm's three attorneys participating in the case. Exhibits attached to the affidavit included a detailed billing account and the costs incurred. As noted, Crosby presented no opposition or challenge to the evidence introduced at trial. Finally, it is quite evident that Sahuque's attorneys have diligently litigated this matter (now on its fifth appeal) since Crosby's original petition for damages filed in 2009.

After considering the record evidence and weighing the factors set forth above, we find no abuse of discretion on the part of the trial court in the award of attorneys' fees and costs. Accordingly, the September 11, 2023 judgment is affirmed.

## DECREE

For the foregoing reasons, we affirm the trial court's judgments rendered August 5, 2022, and September 11, 2023.

**AFFIRMED**